## SCHUERMANN v. UNITED STATES.
### No. 13798.

United States Court of Appeals
Eighth Circuit.

May 10, 1949.

As Corrected on Denial of Rehearing
June 8, 1949.

Joseph Nessenfeld, of St. Louis, Mo. (Jerome F. Duggan, Robert Kratky, and Morris A. Shenker, all of St. Louis, Mo., on the brief), for appellant.

Drake Watson, U. S. Atty., of St. Louis, Mo. (David M. Robinson, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The defendant (appellant), by an indictment in four counts, was charged with having willfully attempted to defeat and evade the payment of federal income taxes by filing a false return for each of the years

6 Cf. Strauss v. United States, 2 Cir., 160 F.2d 1017.

1942, 1943, 1944 and 1945.[1] He entered a plea of not guilty. The case was tried to a jury, which returned a verdict of guilty upon all counts. Sentence was imposed upon the verdict, and the defendant has appealed. He asserts that the court should have directed a verdict of acquittal upon the ground that the evidence was insufficient to sustain his conviction, and that errors of law were committed during the trial which entitle him to a reversal.

The government attempted to prove (1) that the defendant filed a false income tax return for each of the years covered by the indictment, and (2) that he did so willfully in an attempt to defeat or evade payment of a part of his income tax. If the government's evidence was sufficient to make the question of the alleged falsity of the defendant's returns one of fact for the jury, the defendant was not entitled to a directed verdict. We say this because the evidence disclosed the usual badges or indicia of the deliberate concealment of income, namely: (1) Intentional failure to maintain financial records; (2) a much visited safety deposit box, rented under an assumed name; (3) the use by the defendant, in his dealings, of large sums of currency; and (4) purchases of property by the defendant in others' names.

It is the position of the defendant that the government completely failed to produce any substantial evidence that he had any taxable income in excess of that reported by him or that he owed any more taxes than he paid.

The defendant is a married man, who, for a number of years, was engaged in operating in St. Louis, Missouri, a policy or numbers business, a form of lottery or gambling in which numbered tickets are sold and some ticket holders evidently win or hope to do so. The business is illegal in Missouri, but is apparently lucrative if well managed. See United States v. Miro, 2 Cir., 60 F.2d 58. It constituted the defendant's only visible means of support and income during the years in suit.

The defendant's income tax returns for the years 1936, 1938, 1939, 1940 and 1941 reported net income and tax liability as follows:

|  | Net Income. | Tax Liability. |
| --- | --- | --- |
| 1936 | $ 3,660.80 | $ 90.55 |
| 1938 | 3,665.00 | 91.94 |
| 1939 | 4,831.30 | 73.93 |
| 1940 | 8,590.00 | 335.10 |
| 1941 | 14,914.57 | 2,578.80 |

In 1941, the taxing authorities investigated the defendant's returns for the years 1938, 1939 and 1940. As a result of this investigation, deficiency assessments were agreed to for those years. The assessments were based on additional income for 1938 of $6,735, for 1939 of $6,394.36, and for 1940 of $4,759.14. The Revenue Agent who made the examination determined that in 1938 defendant's income from his policy business was $10,400, that in 1939 it was the same amount, and that in 1940 it was $13,-352.70. The report of examination informed the defendant that he must maintain adequate accounting records.

The defendant's returns for 1942, 1943, 1944 and 1945 were prepared by a lawyer and accountant from columnar sheets, furnished by the defendant, purporting to show the results of his business. These returns showed the defendant's net income and tax liability to be as follows:

|  | Net Income. | Tax Liability. |
| --- | --- | --- |
| 1942 | $15,513.94 | $4,280.41 |
| 1943 | none | none |
| 1944 | 3,682.24 | 645.55 |
| 1945 | 17,295.06 | 5,851.38 |

According to the government accountant who investigated the defendant's returns for the years in suit, the corrected net in-

---

[1] The charges were based on § 145(b) of Title 26 U.S.C.A., which, so far as pertinent, provides:

"* * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

come and tax liability of the defendant were as follows:

| | Corrected Net Income. | Tax Liability. |
|---|---|---|
| 1942 | $ 20,911.00 | $ 6,983.91 |
| 1943 | 32,525.17 | 14,811.52 |
| 1944 | 105,463.62 | 74,441.53 |
| 1945 | 85,107.84 | 56,161.54 |

This computation is based upon the theory that on December 31, 1941, the defendant had no substantial capital and that during the subsequent four years his expenditures and investments were attributable to and reflected his current income. The method used by the government for reconstructing the defendant's probable income for the years in question is called the "increasing net worth and expenditures" method. Its use in this case was necessitated by the fact that the defendant had no record of his receipts. He asserts that, before computations based upon this method could be accorded probative value, there would have to be substantial evidence of what the sum total of his assets was on December 31, 1941, and that this has merely been assumed and not proven. In the defendant's brief, it is said:

"In the instant case, there was no proof whatever of income, and no proof of actual net worth. Yet the jury was permitted to infer, without evidence establishing net worth, that the loans and investments in excess of reported taxable income represented an *increase* in net worth and to infer on the basis of such inference that the funds so loaned or invested in any year came from taxable income *first earned* in that year. Upon these inferences, and without a scintilla of proof of income, defendant was convicted, sentenced to a total of nine years [2] and fined $40,000."

The contention of the defendant as to the soundness of the government's computations is not without substance. The government's case is based largely upon the theory that proof of expenditures is, under the circumstances of this case, proof that the defendant, in each of the years involved, had more income than he reported. The evidence of the government does not exclude the possibility that the defendant had some substantial accumulation of capital on December 31, 1941, or that sometime, somehow and somewhere he acquired a large amount of capital out of which he made the loans, investments and expenditures which the government contends reflect income.

While the government had the burden of proof, it was not required to make a perfect case or to prove the defendant guilty to a mathematical certainty. The government did not have to establish the exact amount of unreported income of the defendant. United States v. Johnson, 319 U.S. 503, 517, 63 S.Ct. 1233, 87 L.Ed. 1546. Evidence which, if unexplained and uncontradicted, will justify a conclusion that a taxpayer had income which he deliberately failed to include in his return, is enough to take a case such as this to the jury. Compare, Affronti v. United States, 8 Cir., 145 F.2d 3, 6, and Guzik v. United States, 7 Cir., 54 F.2d 618, 620.

We think it reasonably may be inferred, from the defendant's returns for the years prior to 1942, that the likelihood of his having accumulated a large surplus from his activities was negligible. One can believe that his business, like many other enterprises, legal and illegal, was a beneficiary of the prosperity of the war years, and that his expenditures kept pace with his income. If the skill of the tax evader in concealing income is not to become "an invincible barrier to proof," United States v. Johnson, supra, 319 U.S. at page 518, 63 S.Ct. at page 1240, 87 L.Ed. 1546, the federal appellate courts will have to rely heavily upon the sound judgment of the trial courts in appraising the sufficiency of the evidence to warrant submission of a tax evasion case to a jury, and upon the fairness and common sense of juries in determining guilt or innocence when such cases are submitted to them. See United States v. Johnson, supra, 319 U.S. 503, at pages 519–520, 63 S.Ct. 1233, 87 L.Ed. 1546.

We conclude that the District Court did not err in denying the defendant's motion for a verdict of acquittal.

---

[2] The defendant was placed on probation with respect to five years of the sentence of imprisonment.

Other errors asserted by the defendant relate to the court's failure to give certain instructions requested by the defendant.

The case was argued to the jury during the morning of July 1, 1948. The arguments were concluded at 12:55 P.M. At that time, defendant's counsel presented to the court twenty-two typewritten pages of requested instructions. No copies of the requests were furnished counsel for the government. The court excused the jury until 2:30 P.M., and the following colloquy took place between the court and counsel for the defendant:

"The Court: Let's let the record show that after argument is concluded, the defendant submits his requests. But that is not right. You gentlemen know the rules. This is not the first criminal case you tried.

"Mr. Duggan: First one I tried under the rules.

"The Court: That rule has been in effect for years. In other words, the Court has to have some time to examine instructions. If it was not for taking a noon recess, I would instruct the jury now. I asked you for your requests yesterday at noon.

"Mr. Kratky: Well, I understood the request for the—

"The Court: I will grant some of them, but I have no time now to consider them. What do you want me to do, take my noon recess and study these requests?

"Mr. Kratky: No, but I understood the Court called for the instructions after the—

"The Court: No. You read the rules. They require they be given the Court a sufficient length of time before the arguments start so the Court can go over them, and now you waited until the arguments are in.

"Mr. Kratky: I did not do that purposely, your Honor.

"The Court: I am not saying you did it purposely. I am just saying what the record shows you have done, and why I can not give these instructions the attention they should have."

At 2:30 P.M., when the trial was resumed, the court said to counsel:

"I have gone over the twenty-two instructions submitted to me just before the noon recess by defendant. I think most of them are included in my charge, if not in the language they are requested, the substance of them."

Among the twenty-two instructions requested was one reading as follows:

"The Court instructs the jury that the fact that the defendant has not testified in his own behalf does not create any presumption of guilt against him. The Court further instructs the jury that, under the law, the defendant does not have to prove himself innocent of the offenses of which he is charged in the indictment and that, in our courts of justice, the defendant has the right to stand on the presumption of innocence of the offenses of which he is charged and that he cannot be convicted unless the government has proven the offenses charged against him beyond all reasonable doubt, as the Court has defined that term to you. And the Court further instructs the jury that it must not permit the fact that defendant has not testified in his own behalf to weigh in the slightest degree against the defendant, nor should this fact be permitted to enter into the discussions or deliberations of the jury in any manner."

The charge of the court relative to this same subject matter contained the following:

"The defendant is presumed to be innocent, and this presumption abides with the defendant at all stages in this trial, and this assumption continues until the evidence proves the defendant guilty beyond a reasonable doubt.

"And the burden of convincing you of the guilt of the defendant rests on the government solely and not on the defendant in any respect whatsoever.

 *  *  *  *  *  *

"The burden of proof rests upon the government throughout the case and never shifts, to sustain the charge as set forth in each count; and under the law governing this case, the presence of such testimony in the record of the character I have referred to puts no burden on the defendant to explain where or how he obtained the money so used by him."

In the case of Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 199, 84 L.Ed. 257, the Supreme Court ruled that it was fatal error for the trial court in that case to refuse to give the substance of the following instruction requested by Bruno:

"The failure of any defendant to take the witness stand and testify in his own behalf, does not create any presumption against him; the jury is charged that it must not permit that fact to weigh in the slightest degree against any such defendant, nor should this fact enter into the discussions or deliberations of the jury in any manner."

It is obvious that, in the instant case, the instruction requested by counsel for the defendant was based upon the Bruno case, although it was not called to the trial court's attention.

Rule 30 of the Federal Rules of Criminal Procedure for the United States District Courts, 18 U.S.C.A., provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

This rule is the law. In our opinion, it was intended to prevent the very thing that occurred in this case, namely, the presentation to the trial court, after the case was closed and the court had formulated its charge, of a great mass of requested instructions, not for the purpose of assisting the trial court, but for the purpose of having something to argue about in case of a conviction.

The failure to present the United States Attorney with copies of the requests was a fatal error on the part of defendant's counsel. One of the most important duties of counsel for the government in the trial of a criminal case is to keep error out of the record, and thus to prevent the frustration of the government's efforts to secure a valid conviction. In the instant case nothing was done by defendant's counsel to put government counsel on notice that the defendant had elected to have the court instruct the jury that his failure to testify created no presumption of guilt. Counsel knew, of course, that, unless the defendant chose to have that instruction given, the giving of it would be of doubtful propriety, since it would call the jury's attention to the defendant's failure to testify. Wilson v. United States, 149 U.S. 60, 65, 13 S.Ct. 765, 37 L.Ed. 650. It is true that, at the conclusion of the court's charge, counsel for the defendant took an exception "because it did not include an instruction that the fact that the defendant had not testified in his own behalf did not create any presumption of guilt." That exception, however, did not advise the court or counsel for the government that the defendant had, pursuant to the rule of the Bruno case, elected to have the court so instruct the jury.

Counsel for the defendant, in belatedly presenting their requests for instructions, may not have intended to set a trap for the court and for opposing counsel, but that is exactly what they did. They gave the court an inadequate opportunity to study their requests. They gave counsel for the government no opportunity at all to consider them. They did not direct the court's attention to the rule announced in the Bruno case and its applicability to the specific request based on that case.

█ Under the circumstances, we hold that the District Court's denial of the defendant's request to instruct the jury that his failure to testify created no presumption of guilt, does not entitle him to a reversal of the judgment.

█ The other requests for instructions which the defendant contends should have

been given, have the same procedural infirmity as the one which we have discussed Moreover, the failure to give them, had they been appropriately presented to the court for consideration, would, we think, not have been error. The charge of the court was fair, and adequately covered the issues tried.

The contention that the trial judge was hostile and unfair to the defendant during the trial is not substantiated by the record.

The judgment is affirmed.