**Joseph Irvin ROSENFIELD, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15088.**

United States Court of Appeals
Eighth Circuit.

Oct. 27, 1954.

Howard H. Gelb, St. Paul, Minn., for appellant.

Alex Dim, Asst. U. S. Atty., St. Paul Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant was convicted upon counts one and three of a three count indictment charging violations of the Mann Act, 18 U.S.C.A. § 2421, and was sentenced upon the jury's verdict of guilty to imprisonment for the period of two years "and that said sentence serve as a general sentence under and upon counts one and three of the indictment". He assigns as errors requiring reversal that the court erred (1) in denying his mo-

tion made at the conclusion of all the evidence for directed verdict of acquittal as to counts one and three for lack of and for insufficiency of evidence, and (2) in receiving certain testimony in evidence. (3) He also contends that there was misconduct of counsel requiring reversal.

The charge of count one of the indictment was that the defendant on or about July 16, 1951, knowingly transported a woman identified on the trial as Helen Louise Dalzen [1] from Minneapolis, Minnesota, to the vicinity of Hudson, Wisconsin, for the purposes of prostitution and with the intent of inducing her to become a prostitute and to engage in other immoral practices, in violation of 18 U.S.C.A. § 2421. The charge of count three was that defendant did on or about August 28, 1951, knowingly cause to be transported the same woman from Minneapolis to Superior, Wisconsin, for the same purposes and with the same intent, contrary to the same section.

(1) As to the conviction on the first count, appellant contends that "the evidence as to the interstate character of the transportation was not clearly established."

The prosecuting witness, Helen Louise Dalzen, testified that she engaged in prostitution in Minneapolis at the solicitation of defendant; that she had an arrangement with defendant whereby she was to give him from five dollars to ten dollars for each "trick" which he referred to her and that defendant obtained "good tricks" for her. "Tricks" were engaging in sexual intercourse for pay. Defendant asked her if she wanted to work out of town, and upon her consenting he arranged with her to go with him to Wisconsin, and on Monday, July 17, 1951, defendant did transport her in his automobile from Minneapolis to a town which she believed was Hudson, Wisconsin. She had not been in and did not know that town before, but defendant told her he was taking her to Hudson. He drove her across a toll bridge as to which she said, "I know that the bridge is a toll bridge leading from one state to another". She said she was certain that she took the trip to Hudson in July, 1951. As they drove into the town defendant told her they were coming into Hudson, Wisconsin. They stopped and had something to eat at a restaurant. Defendant told her they were in Hudson and he was taking her to a house which was outside of Hudson.

He took her to a house where she met a woman whom she identified as Coletta Rosenfield, alias Mabel Morris, who was the divorced wife of defendant. The woman took the witness to a room in the house and brought several men to her with whom she had sexual intercourse. She did not collect the money from the men, but the next day the defendant drove her back to Minneapolis and he paid her seventy-five dollars. She had been drinking heavily on the night she was taken to Hudson by defendant and took between twenty and twenty-five drinks. Before the trial she was taken by officers to Hudson, Wisconsin, but though she was not able to find the house to which she had been taken by defendant she believed that Hudson, Wisconsin, was the town to which defendant had transported her from Minneapolis. The witness was an inmate of the Shakopee Reformatory at the time of the trial, serving sentence for bigamy.

Defendant denied that he had transported the witness Dalzen to Hudson, Wisconsin, and adduced testimony tending to dispute her testimony in particulars and to establish an alibi for himself.

But on careful consideration of all the evidence, we conclude that the testimony of the witness Dalzen constituted substantial evidence to support the charge of interstate transportation in the first count. The questions of fact could only be settled by the jury. We find no error in the court's refusal to take the first count from the jury.

1. Alias Helen Louise Spaulding or Helen Louise Melina.

(2). Appellant also complains of the court's receiving in evidence certain testimony given by the government witness Robert L. Snyder, a special agent of the F.B.I., who made an investigation of this case. He testified that at the time of the investigation the defendant through his attorney "summoned the witness to discuss this case with him" and defendant was accordingly interviewed by the agent in the presence of his lawyer. After the first interview there was a second one, also at the defendant's own instance. In substance, defendant related to Snyder that he had married a prostitute named Mabel Morris in 1938, having met her in 1936, and that thereafter "he worked as master of ceremonies while Mabel continued her prostitution activities". But defendant's statement was that he went into military service in 1943 and when he returned in 1945 he and Mabel drifted apart. He worked at Vic's Bar in Minneapolis and she lived in Superior, Wisconsin. He knew she continued her prostitution but he remained friendly with her and had on occasion spoken with her where she lived but otherwise had no further connection with her. At the first interview when defendant was shown a photograph of Miss Dalzen he said he could not identify her, but at the second interview he said he vaguely recalled her but couldn't remember when or where he met her. But defendant did consistently maintain to agent Snyder that after his military service he was not in any way connected with prostitution activities.

In the course of the examination of the agent Snyder both the prosecuting attorney on direct examination, and the defendant's attorney on crossexamination, elicited from him that defendant had voluntarily given the information that he had had connection with prostitution activities before his military service but that he had not had any connection afterwards. During the direct examination the witness said, "I asked [defendant] if he had ever been a pimp. He said 'yes' he had." The agent was interrogated further on crossexamina-

tion and defendant's counsel again brought out by his inquiries that defendant had stated that his wife, Mabel Morris, was a prostitute before he went into military service and that defendant was in some way connected with her activities, but that after the war he was not in any way engaged in such activities.

The record shows no objection made to any question that was propounded to the witness Snyder, but following Snyder's statement that defendant said he had been a pimp, counsel for defendant said, "I object to that, Your Honor. He may be relating conversation but it has nothing to do with the indictment here and I believe it is highly prejudicial." No motion was made to strike the testimony.

The contention made here is that the failure of the court to exclude or strike the testimony came within the rule against permitting extraneous criminal conduct not connected with the charge on trial to be shown against a defendant to impeach or discredit him. Appellant cites Speiller v. United States, 3 Cir., 31 F.2d 682; Salerno v. United States, 8 Cir., 61 F.2d 419, and Echert v. United States, 8 Cir., 188 F.2d 336.

But we do not hold that there was error as charged. The prosecuting witness testified that it was the defendant's divorced wife Mabel Morris to whom he took her in Hudson and she said Mabel Morris brought several men into the room with the witness for immoral purposes. The statements defendant made to the F.B.I. agent to try to prevent his prosecution concerned his relations with Mabel Morris before and at the time of the Hudson transaction. The facts that he knew her as a prostitute two years before he married her and acted as a master of ceremonies (or pimp) for her, and continued to see her and speak to her directly and by telephone and remained on friendly terms with her were material and were corroborative of Miss Dalzen's testimony that he was acting as a procurer (or pimp) with the same Mabel Morris that night at Hudson. That such acting as a pimp or procurer may have been against some criminal law of the

State was entirely immaterial. The cases cited are not to the contrary.

Appellant also complains that "the court erred in allowing into evidence the testimony of Scanlon, Kane and Crooker and telephone calls from the defendant to Mabel Morris" and in the same connection argues that "all of the above testimony should have been stricken as requested by defendant's counsel when the government closed its case in chief."

We have carefully examined the designated testimony and all of the record and we do not find that any testimony prejudicial to defendant was erroneously received in evidence against him.

The record does show that at the conclusion of the government's evidence defendant moved "to strike all of the evidence of" five named witnesses and "all of the exhibits relative to telephone conversation between" certain parties, and on said motion being overruled defendant proceeded to call witnesses and present his defense. But we do not find in appellant's brief any statement of points for review relating to the admission of the evidence above designated as to which appellant's brief quotes the evidence referred to and any objections or other equivalent action taken relative thereto together with the rulings of the court thereon giving the pages of the printed record on which the quotations appear—as required by Rule 11(b)(3) of this court. We do not find it necessary to discuss in detail any other complaints made as to admission of evidence.

(3) Appellant complains that there were instances of misconduct of counsel as to which it is said that they "might not of themselves be sufficient grounds for reversal". We have examined the instances and do not find grounds for reversal in respect to them.

We think it is clear as to count one of the indictment that the conviction and sentence were without error and the sentence of two years imprisonment imposed was within the statutory penalty provided for the offense set forth in that count. In that situation we deem it un-

necessary to devote further consideration or discussion to the third count on which defendant was also convicted. No part of the sentence was particularly attributed to that count. As stated in Hulahan v. United States, 8 Cir., 214 F.2d 441, 442:

> "When the defendant in a criminal case is convicted upon several counts of an indictment, the judgment will be sustained if he was properly convicted under any count which is good and is sufficient in itself to support the judgment. Gantz v. United States, 8 Cir., 127 F.2d 498, 501; Bowen v. United States, 8 Cir., 153 F.2d 747, 748–749; Hansbrough v. United States, 8 Cir., 156 F.2d 327, 328."

It is argued that the mere presence of the third count and receiving of evidence thereon and submission of the same to the jury was prejudicial in respect to the first count, but we consider the contention to be without merit. The judgment appealed from is affirmed.