O. K. ARMSTRONG, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15381.

United States Court of Appeals Eighth Circuit.

Jan. 18, 1956.

Horace S. Haseltine, Springfield, Mo. (Harold T. Lincoln, Springfield, Mo., was with him on the brief), for appellant.

Kenneth C. West, Asst. U. S. Atty., Kansas City, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

SANBORN, Circuit Judge.

O. K. Armstrong entered a plea of not guilty to an indictment in three counts, each of which charged him, under Section 145(b) of Title 26 U.S.C., with having wilfully attempted to defeat and evade income taxes owed the United States by filing a false return. The first count related to his income tax for 1947, and the following two counts related to his 1948 and 1949 taxes, respectively. He was tried to a jury, which returned a verdict of guilty upon each count. The printed record shows that "on the verdict of guilty the Court assessed a fine of $500.00 on each of the three counts, making a total fine of $1,500.00 and costs on execution." If this was a general sentence upon all three counts it would only be necessary for this Court to ascertain whether the defendant was properly convicted under any one of the three counts, since the total fine assessed did not exceed that which could have been assessed under a single count.[1] We assume, however, that the sentence was not general and that if the defendant was improperly convicted under any count, the fine under that count would

---

1. Claassen v. United States, 142 U.S. 140, 146–147, 12 S.Ct. 169, 35 L.Ed. 966; Evans v. United States, 153 U.S. 584, 595, 14 S.Ct. 934, 38 L.Ed. 830; Evans v. United States, 153 U.S. 608, 14 S.Ct. 939, 38 L.Ed. 839; Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173; Pierce v. United States, 252 U.S. 239, 252–253, 40 S.Ct. 205, 64 L.Ed. 542; Brooks v. United States, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699; United States v. Trenton Potteries Co., 273 U.S. 392, 401–402, 47 S.Ct. 377, 71 L.Ed. 700; Whitfield v. Ohio, 297 U.S. 431, 438, 56 S.Ct. 532, 80 L.Ed. 778; Kiyoshi Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 328 U.S. 640 (footnote on pages 641 and 642), 66 S.Ct. 1180, on page 1181, 90 L.Ed. 1489; Gantz v. United States, 8 Cir., 127 F.2d 498, 501; Bowen v. United States, 8 Cir., 153 F.2d 747, 748–749; Hansbrough v. United States, 8 Cir., 156 F.2d 327, 328; Hulahan v. United States, 8 Cir., 214 F.2d 441, 442; Rosenfield v. United States, 8 Cir., 216 F.2d 260, 263.

have to be vacated and a new trial directed as to that count.

Two questions are presented for review: (1) whether the District Court erred in failing to give an instruction requested by the defendant which related solely to the third count of the indictment; and (2) whether the Court abused its discretion in refusing to grant the defendant a new trial upon the ground that the jury's verdict was a compromise.

We think the first of these questions was not properly preserved for review. The defendant had requested three instructions. The first had to do with the deductibility of expenses incurred by him in connection with certain speaking engagements. The second related to the deductibility of expenses incurred by him on a trip to South America in December of 1949. The third instruction requested read as follows:

"The court instructs the jury that if you find and believe from all the evidence that the defendant received a Twenty-five hundred dollar ($2500) check from the Reader's Digest [The Reader's Digest Association, Inc.] on or about November 4, 1949, and if you further find and believe that such check was delivered to the defendant without any services or other consideration having been rendered therefor in the past or anticipated in the future then such check is to be considered a gift and not taxable income, and as a gift, if you so find, it need not have been reported as income on the return of the defendant in the year in which it was received; and this is true even though the Reader's Digest may have carried said check on its records as a bonus, if you so find the defendant had no knowledge thereof."

The check referred to in the third of the requested instructions was one which the defendant had received in 1949 from the Reader's Digest. His testimony was that it was a nontaxable gift, and therefore had not been included as taxable income in his return for 1949. The Government claimed that it was a taxable bonus. The Reader's Digest had reported it as a bonus and had taken a tax deduction for it. With respect to this matter the court instructed the jury as follows:

"There is evidence before you with respect to a payment made by the Reader's Digest Corporation to Mr. Armstrong in 1949. The Government contends such payment was a bonus and therefore additional compensation paid to Mr. Armstrong by the Reader's Digest Corporation in the year 1949, and therefore should be chargeable to him in determining his gross income during the year 1949. Defendant contends that such payment was made and received by him as a gift and therefore the same is not taxable as earned income received by him.

"Under the Internal Revenue Code, ' "Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid'. (26 U.S.C.A. [I.R.C. 1939] § 22.)

"A bonus paid by a corporate employer to an employee in consequence of his employment is taxable income. A gift by an employer to an employee, made by an employer wholly from altruistic motives of affection and regard and not as a consequence of his employment by the employer, is non-taxable income.

"In considering the matter in this case you will recall Mr. Wallace's testimony that the Reader's Digest Company charged on its books as a bonus the payment of $2500 paid to Mr. Armstrong, and claimed it as a deduction for compensation paid him and so reported it to the Government in a 1090 form which the Reader's Digest Corporation is required to file with the Bureau of Internal Revenue. The intention of

the employer in making any such payment is to be ascertained from the facts in the case and determines the liability and the identity of the transaction in question and in the light of the testimony of Mr. Wallace I charge you that the $2500 paid to the defendant in 1949 is and was a bonus and therefore taxable income of Mr. Armstrong in the year 1949, and you may so consider it in determining his tax liability to the Government for that calendar year.

"That fact, standing alone, is not decisive of the issue that you must determine in this case. Mr. Armstrong may be liable to pay income taxes on that sum, but the issue here for your determination is whether he wilfully failed to report such sum in his 1949 return with the intent to defeat and evade any tax due the Government because of such payment.

"Notwithstanding the fact that the $2500 payment made to Mr. Armstrong was a bonus, yet if you should find and believe from the evidence that Mr. Armstrong in good faith believed at the time he received that sum from the Reader's Digest Corporation that the sum was the payment to him of a gift, that he had reasonable grounds for such belief when all the facts and circumstances are considered surrounding the delivery of that particular check to him by Mr. Wallace, and that Mr. Armstrong, in reliance on such good faith belief, did not report the same in his 1949 income tax return, then under such circumstances Mr. Armstrong could not be said to have been guilty of the wilfulness such as is necessary to find to sustain his conviction in this case because of that item.

"However, if you find and believe from the evidence that Mr. Armstrong knew that said sum was being paid to him as a bonus, the same

was given in consideration of his employment by Reader's Digest, as a consequence of his employment by the Reader's Digest, and further find beyond a reasonable doubt that he wilfully failed to report said sum in 1949 income tax return in an attempt to defeat and evade the payment, then if you so find the defendant would be guilty of the charge made against him in the third count of the indictment in this case."

By these instructions the jury was given to understand that, under the evidence, the check for $2,500 was a part of the taxable income of the defendant for the year 1949 and was properly includable as such in his return for that year, but that if he believed it to be a gift, as he had testified, and therefore had not included it in taxable income, he could not, because of his failure to include it in his return, be found guilty of a wilful attempt to evade his income taxes for 1949, as charged in the third count of the indictment.

When the Judge had completed his charge, he asked counsel, "Are there any exceptions to the charge?" Counsel for the defendant said, "Note our objections to the failure of the Court to give the instructions as submitted by the defendant." The Judge said, "Yes, Is that all?" Counsel for the Government said, "I haven't seen them, but I guess it is all right." The Judge replied, "I think I gave them in substance."

Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the ar-

guments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Apparently no copy of the defendant's requests was furnished counsel for the Government. In its brief the Government complains of this omission on the part of the defendant. The defendant in his brief says: "The Court was apprised of the requested instruction and although the counsel for the government stated he had not seen them he stated that he guessed it was alright. Government counsel certainly had the opportunity to examine the instructions requested if desired."

The defendant did not comply with Rule 30. He evidently did not furnish a copy of his requested instructions to counsel for the Government. He did not specifically state to what claimed error in the instructions he objected and the grounds for his objection. A party objecting to a failure of the trial court to give instructions requested must state specifically to what he objects and why.[2] The object of the Rule is to reduce the possibility of error by giving the trial judge an adequate opportunity to correct any mistakes in his charge, as well as to afford the opposing party an opportunity to keep error out of the record. See Schuermann v. United States, 8 Cir., 174 F.2d 397, 401. It is not inconceivable that in this case, had the defendant distinctly pointed out the exact basis for his objection, the Government might have joined in the request that the issue whether the $2,500 check was a gift or a bonus be submitted to the jury, in order to avoid any question being later raised on that score. Rule 30 is a salutary rule and ought not to be impaired by treating errors in instructions, not specifically objected to, as plain errors which should be noted in the public interest to prevent a miscarriage of justice. The plainer an error in a charge to a jury is, the more likely it is that the error will be corrected by the trial court if its attention and that of opposing counsel is specifically directed to the error.

 The vital and controlling issue under the third count of the indictment was not whether the check for $2,500 of the Reader's Digest was income taxable to the defendant, but whether the defendant's understatement of his income in his return for the year 1949, which understatement greatly exceeded $2,500, was deliberate or was unintentional. Assuming that the question whether the check for $2,500 was a gift or a bonus was for the jury, we think that the failure of the trial court to instruct the jury in that regard, as requested by the defendant, would not, under the circumstances of this case, call for a reversal of the judgment imposed under count three of the indictment.

 The second error asserted by the defendant arises out of the following situation: The case was submitted to the jury on April 13, 1955. The jury returned for further instructions. The court was asked by the foreman of the jury whether the jury could "make recommendations on their verdict." The court said they could. Thereafter, on the same day, the jury returned a verdict finding the defendant guilty on each count of the indictment. At the time the verdict was returned, the court asked the jury: "Now, gentlemen of the jury and Mr. Frick [foreman of the jury, who signed the verdict and presented it to the court], each of you has agreed to

2. Hall v. Aetna Life Ins. Co., 8 Cir., 85 F.2d 447, 450–451; Palmer v. Miller, 8 Cir., 145 F.2d 926, 930; Schuermann v. United States, 8 Cir., 174 F.2d 397, 401; United States v. Furlong, 7 Cir., 194 F.2d 1, 3; Zammar v. United States, 8 Cir., 217 F.2d 223, 227; Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645.

each one of these verdicts [verdict of guilty on each count]? That is the unanimous verdict of the jury and every juror has agreed to the verdict?" There was no dissent by any juror. No request was made that the jury be polled. The court said to the jury, "Now, what recommendation is it that the jury desires to make?" The foreman of the jury replied, "Your Honor, the entire jury recommends leniency in this case." The court replied, "The Court will take that into consideration in assessing the sentence in this case."

On April 19, 1955, the defendant made a motion for a judgment of acquittal, notwithstanding the verdict, or, in the alternative, for a new trial, on the grounds that the verdict was not justified by the evidence and that the court had erred "in refusing to charge the jury as requested."

On April 20, 1955, a verified letter addressed to the trial judge was presented by one of the men who had served on the jury. The letter, which was filed, read as follows:

"I have been much troubled by the verdict cast against Mr. Armstrong last Wednesday in your court.

"Most of the jury did not want to come back; I did not feel Mr. Armstrong was guilty as charged and I argued we should come back next day and debate the issue. They finally suggested we compromise the verdict and ask for leniency, that included most of the jury. But I tell you honestly I made a mistake in agreeing to the compromise. I never believed him guilty, and I want to correct the mistake. I hereby certify that the evidence never convinced me beyond a reasonable doubt that he was guilty, and I do not want to do him an injustice."

Two other former members of the jury, shortly thereafter, gave sworn statements to the same effect. On May 23, 1955, the defendant, through counsel who had not represented him at the trial, filed suggestions that he should be granted a new trial because it appeared that the verdict of the jury resulted from a compromise reached prior to, and which did not inhere in, the verdict.

The question of the legality of the verdict on the ground that it was a compromise was not raised in the defendant's motion for a new trial, but was raised by the "suggestions" above referred to. The District Court, in denying a new trial and in striking the suggestions of the defendant's counsel from the record, ruled upon the question. The court held, in effect, that the verdict of the jury could not be affected, disturbed or impeached by the evidence of former jurors as to what had occurred during the deliberations of the jury in the jury room. In support of its conclusion in that regard, the court cited and relied upon Hyde v. United States, 225 U.S. 347, 382–384, 32 S.Ct. 793, 56 L.Ed. 1114; McDonald v. Pless, 238 U.S. 264, 267–268, 35 S.Ct. 783, 59 L.Ed. 1300; Stewart v. United States, 8 Cir., 300 F. 769, 787, 788; Manhattan Oil Co. v. Mosby, 8 Cir., 72 F.2d 840, 847, certiorari denied 293 U.S. 623, 55 S.Ct. 237, 79 L.Ed. 710; Hoblik v. United States, 8 Cir., 151 F.2d 971, 973; United States v. Kansas City, Mo., 8 Cir., 157 F.2d 459; Jorgensen v. York Ice Machinery Corporation, 2 Cir., 160 F.2d 432, 435; Young v. United States, 10 Cir., 163 F.2d 187, 188–190; Rakes v. United States, 4 Cir., 169 F.2d 739, 745.

If the discussions and deliberations of jurors in the seclusion of their jury room while attempting to reach an agreement upon a verdict do not inhere in the verdict ultimately returned, we are at a loss to know what would inhere in a verdict. The District Court was, we think, so clearly right in denying the defendant a new trial upon his claim that the statements of former members of the jury showed the verdict to be a compromise, that no further discussion of that question is called for or could serve any useful purpose.

The judgment appealed from is affirmed.