**UNITED STATES of America,**
**Appellee,**

v.

**Raymond BROWN and Steven Liley,**
**Appellants.**

**No. 71–1105.**

United States Court of Appeals,
Eighth Circuit.

Nov. 30, 1971.

Certiorari Denied March 6, 1972.
See 92 S.Ct. 1205.

Bright, Circuit Judge, concurred and filed an opinion.

Douglas W. Thomson (Court appointed), Thomson, Wylde & Nordby, Jack S. Nordby, St. Paul, Minn., for appellants.

Neal Shapiro, Asst. U. S. Atty., Robert G. Renner, U. S. Atty. D. Minn., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Appellant defendants, Raymond Brown and Steven Liley, bring this appeal from their conviction upon verdicts of guilty after trial by jury of the offenses of selling depressant and stimulant drugs in violation of 21 U.S.C. § 331(q) (2), and selling narcotic drugs not being in pursuance of a written order of the purchaser on a form issued for the purpose by the Treasury, in violation of 26 U.S.C. § 4705(a). Defendant Brown was sentenced to imprisonment for twelve years on the narcotic charge and five years on each of three depressant and stimulant drug charges, the sentences to run concurrently. Defendant Liley was imprisoned for twelve years on each of two narcotic charges and five years on one depressant and stimulant drug charge, the sentences to run concurrently.[1] Appel-

---

1. Defendant Brown was charged in Counts I, II, III with sales of depressant and stimulant drugs (21 U.S.C. § 331(q) (2)) on December 17, 1969, 1000 capsules;

lants join in all claims of error with an additional claimed error by defendant Brown in connection with Count IV (a cocaine count) which will be separately discussed.

### Entrapment as a matter of law

■ Appellants' initial complaint is that the evidence as a whole established entrapment as a matter of law. In this connection they urge that the evidence shows that all of the illegal sales charged were arranged by informant Thomas Liley, brother of appellant Steven Liley, who was allegedly retained by the Government on a contingent fee basis, and who was not called as a Government witness, thus unfairly depriving appellants of the right to cross-examine him; tney further contend that appellants' testimony shows that the informant induced them to make the sales charged under the pretense that informant would be killed if they failed to do so. We, of course, review the evidence in the light most favorable to the Government in determining whether there was a jury issue on the question of entrapment.

In brief, this case began in early December 1969 when Thomas Liley came to the offices of the Bureau of Narcotics and Dangerous Drugs in Minneapolis and offered to provide information. At that time he showed concern for the involvement of several of his brothers in the narcotic and dangerous drug traffic and he wondered what he could do about it. The services of informant Thomas Liley were thereafter utilized by the Government agents in making the purchases set out in the indictment. Informant posed as the front man for Special Agent Muhlhauser of the Bureau of Narcotics and Dangerous Drugs, who in turn posed as a member of the Mafia under the name of "Fast Eddy." All of the sales charged as offenses in the indictment were made to Agent Muhlhauser.[2] Informant Liley made the arrangements for the meeting between appellants and Muhlhauser which culminated in the sales. Appellants both testified that they were reluctant participants in the drug transactions; that they were induced to do so by informant Thomas Liley's representations that his life was in danger because of debts owed his boss "Fast Eddy," a Mafia hired killer, and that the only way informant Thomas Liley's life would be spared was if he could arrange for the sale of drugs which ultimately took place. Appellants admitted all of the transactions in question except they denied appellant Brown's participation in the sale of cocaine on July 14, 1970 (Count IV). The defense of entrapment was pursued actively throughout the trial. It began with the vigorous cross-examination of the Government's first witness, Agent Muhlhauser, and was continued in the cross-examination of other agents who testified.

■ There is substantial evidence which supports the jury's finding that appellants were not entrapped, induced or coerced into committing the offenses charged. Agent Muhlhauser testified that it was made clear to informant that you don't induce anyone to sell drugs; that informant was paid $25 a day for the days he actually worked; that Muhlhauser had information that appellant Brown was dealing in drugs approximately six months before he was contacted by informant Liley and the first sale consummated on December 17, 1969;[3]

January 2, 1970, 2,405 capsules; and on July 14, 1970, one milligram; and Count IV sale of cocaine on July 14, 1970 (26 U.S.C. § 4705(a)). Defendant Liley was charged in the same indictment with defendant Brown on Counts III and IV plus Count V, sale of cocaine on July 16, 1970. (26 U.S.C. § 4705(a)). Defendants were found guilty on all counts as charged.

2. The sale of cocaine charged in Count V (July 16, 1970) was actually a delivery of cocaine by appellant Liley to Agent Muhlhauser to make up a shortage in the amount sold and delivered on July 14, 1970 (Count IV).

3. This testimony was elicited from Muhlhauser on cross-examination by appellants' counsel.

that during his meeting with appellant Brown on that date, Brown offered to sell amphetamines at a price of $25 per hundred; that he, Muhlhauser, protested the price was too high; that Brown said that in quantities of 5,000 or more the price would go down to roughly $15 per hundred; that he ultimately purchased two bottles containing approximately 1000 capsules for $250; that on numerous occasions he had conversations with appellants in which they freely discussed their ability to furnish various types of drugs;[4] that on one occasion, July 14, 1970, in a conversation with both appellants, appellant Brown stated that he and appellant Liley sold cocaine for Hell's Angels, and that there then ensued a bargaining discussion over prices which ultimately resulted in Agent Muhlhauser agreeing to purchase an ounce of cocaine for $1250 upon the representation it was of good quality.

█ No useful purpose would be served by setting out all of conversations and occurrences which support the trial court's ruling denying appellants motions for judgment of acquittal on the grounds there was entrapment as a matter of law. It was properly submitted as a jury issue. See, Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958); Cf. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). The record fails to support appellants' claims that informant was paid on a contingent fee basis or that appellants were as a matter of law coerced into making the sales in question. In this connection appellants' complaint of error and prejudice because the Government failed to call informant Thomas Liley as a witness is devoid of merit. The Government made informant Liley available for interview by appellants' counsel and they were free to call him as a witness if they desired to do so. Clingan v. United States, 400 F.2d 849 (5 Cir. 1968).

### Entrapment Instruction

█ Appellants next complain that the trial court's instruction on entrapment was erroneous.[5] The thrust of ap-

---

4. For example, on January 2, 1970, appellant Brown told Agent Muhlhauser he could supply 5,000 amphetamines per week at a price of $20 a hundred. On July 16, 1970, appellant Liley told Muhlhauser he could supply him as many Dexedrine capsules as he wanted for a price of $7.00 a hundred, and that he knew a chemist in Salt Lake. City who would make 40,000 dosage units of LSD for a thousand dollars profit. Appellant Liley told Agent McDowell on April 21, 1970 that 40,000 dosages of LSD could be obtained from Salt Lake City for $4,000.

5. The instruction on entrapment given by the trial court was as follows:

"The defendants assert that they were victims of entrapment as to the crime charged in the indictment.

Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment and the law as a matter of policy forbids his conviction in such a case.

On the other hand, where a person already has the readiness and willing-

ness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity is not entrapment. For example, when the Government suspects that a person is engaged in the illicit sale of narcotics, it is not entrapment for a Government agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from such suspected person.

If, then, the jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the defendant or defendants were ready and willing to commit crimes such as charged in the indictment, whenever opportunity was afforded, and that Government officers or their agents did no more than offer the opportunity, then the jury should find that the defendant or defendants are not victims of entrapment.

On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the defendant or defendants had the previous intent or purpose to commit any offense of the character here charged, and did so only

pellants' complaint is that the entrapment instruction "fails entirely to advise the jury to consider the misconduct of the entrapping agent * * * the emphasis is almost entirely upon the state of mind, or predisposition of the defendant." We have considered appellants' requested instruction, as well as the one given by the court. We find that the court's instruction properly follows the standards governing the issue of entrapment. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, *supra*; Rogers v. United States, 367 F.2d 998, 1001–1003 (8 Cir. 1966).

Although not stressed during the trial, appellants additionally complain that the entrapment instruction fails to specifically state that the Government must prove beyond a reasonable doubt that a defendant was not entrapped.

Appellants submitted twelve requested instructions which included an entrapment instruction which contained a specific statement that the Government must prove beyond a reasonable doubt that the defendant was not induced to commit the unlawful conduct charged. Prior to the final submission of instructions to the jury the appellants made general objections as follows:

"* * * MR. THOMSON: Yes, Your Honor. Both defendants would except to those requested instructions submitted to the Court and refused.

We specifically except to the Court's charge on the definition of entrapment on the grounds that it does not fairly and adequately state the law of entrapment.

Then thirdly we will except to the Court's instruction on the credibility of the defendant as a witness, in the form of a cautionary instruction the jury should look closely at the testimony of defendants on the grounds

because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him."

that they have a special interest in the outcome."

The jury then retired to deliberate. Less than three hours later the jury requested a copy of the indictment, a clarification of the agency issue and a clarification of the entrapment issue. The Court complied by re-reading the agency instruction and the entrapment instruction and giving a copy of the indictment to the jury. After the jury again retired, the Court gave the parties an opportunity to take exception. Appellants then made the following objection:

"* * * We again object and except to the charge on entrapment as given. I believe it is not a correct statement of the law, and a special reference to the example that's used in the instruction. Rather than an exception to the entrapment defense, defendant has a predisposition to commit the offense; however, the instruction says that when the Government suspects that he is engaged in narcotics, then the entrapment defense is not available, and to that extent we except to the instruction as given."

Initially it should be noted that appellants did not comply with that part of Rule 30, Federal Rules of Criminal Procedure, which requires that objections to instructions must be made "before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection * * *." The purpose is to reduce the possibility of error.

"A party objecting to a failure of the trial court to give instructions requested must state specifically to what he objects and why. The object of the Rule is to reduce the possibility of error by giving the trial judge an adequate opportunity to correct any mistakes in his charge, as well as to afford the opposing party an opportunity to keep error out of the record."

The above instruction is taken from 1 Devitt and Blackmar, Federal Jury Practice and Instructions, § 13.13 (2d Ed. 1970).

(Footnote omitted). Armstrong v. United States, 228 F.2d 764, 768 (8 Cir. 1956).

See, Pritchard v. United States, 386 F. 2d 760, 768 (8 Cir. 1967); Dranow v. United States, 307 F.2d 545, 569 (8 Cir. 1962).

■ Appellants' specific objection to the instruction on entrapment made after the jury requested additional clarification pointed up the objection previously discussed herein, but did not press the matter of reasonable doubt. We, nevertheless, must determine whether there was plain error in failing to specifically state in the entrapment instruction the burden on the Government in this regard. In so doing we must consider the instructions as a whole. The trial court at the outset cautioned the jury that they were not to single out one instruction alone but the instructions were to be considered as a whole; there followed; instructions regarding the indictment, the presumption of innocence, the burden on the prosecution to prove beyond a reasonable doubt every essential element of the crime charged, an additional burden of proof instruction which stated in part:

> "The Government in this case has the burden of proof and, to sustain this burden, must prove its case with regard to the various Counts in the Indictment beyond a reasonable doubt. There is no burden on a defendant to introduce any evidence, or, having introduced evidence, to convince you thereby of any fact which if true would be a defense to the charge in the Indictment."

We are satisfied that when the instructions are considered as a whole they make it reasonably clear that the burden of proof was on the Government to prove beyond a reasonable doubt that the defendants were not entrapped. See, Unit-

ed States v. Levin, 443 F.2d 1101 (8 Cir. 1971); *cf.* Lopez v. United States, 373 U.S. 427, 433–437, 83 S.Ct. 1381, 10 L. Ed.2d 462 (1963).

### *Special Interest Instruction*

■ Appellants charge the Court erred in referring to a defendant's "special interest in the outcome of the trial." [6] We again assert this Court's preference that a "defendant not be singled out." Taylor v. United States, 390 F.2d 278, 285 (8 Cir. 1968). In this case we are satisfied that prejudice has not been shown.

### *Evidence of Similar Acts*

The Government offered evidence of a sale of heroin by appellant Liley on April 21, 1970 in Omaha, Nebraska to Special Agent McDowell. Defendant objected and moved for a mistrial because of the prejudice involved. The Government urged the trial court to receive the evidence as being material to the issue of entrapment and to the issue of intent, citing United States v. Lewis, 423 F.2d 457 (8 Cir. 1970). Appellants contended that at that stage of the trial no evidence had been offered "of any procuring agent defense or any entrapment defense" and further that intent was not an issue. The trial court pointed out that intent was an issue in the Title 26, § 4505(a) charges contained in Counts IV and V and in receiving the evidence admonished the jury as follows:

> "In this case, members of the jury, the defendant Liley is not charged with any offense having to do with any transaction or non-transaction on April 21, 1970, in Omaha. The evidence as to that conduct or conduct as to acts have been received and will be received as it bears on the intent of the defendant Liley."

---

6. The instruction was as follows:
 "A defendant who wishes to testify is a competent witness and his testimony should not be disbelieved merely because he is a defendant. However, in weighing his testimony, the jury should consider the fact that a defendant has a special interest in the outcome of the trial."

 The parties in this appeal adopt the positions taken below with additional argument and citation of authority. Appellants particularly urge that United States v. Crawford, 438 F.2d 441, 447–448 (8 Cir. 1971) indicates intent is not an essential element of the crimes charged. Appellants concede that an additional exception to the general prohibitions against receipt of evidence of other offenses (set out in *Lewis, supra*, 423 F.2d at 459), has been recognized in entrapment cases. Sherman v. United States, *supra*, 356 U.S. at 373, 78 S.Ct. 819; Sorrells v. United States, *supra*, 287 U.S. at 451, 53 S.Ct. 210; Sauvain v. United States, 31 F.2d 732 (8 Cir. 1929). However, they argue that the defense of entrapment had not been raised at that stage of the trial. We disagree. Agent Muhlhauser had previously been cross-examined vigorously regarding: his posing as "Fast Eddy" a hit man for the Mafia; his relationship with informant Liley including the possibility that informant would receive an award for his activities in behalf of the Government; the fact that the only transactions he had with appellants were the infrequent ones set out in the indictment; and that informant Liley arranged the meetings out of which the sales took place. The defense of entrapment may be raised by cross-examination of the Government's witnesses. Sherman v. United States, *supra*, 356 U.S. at 373, 78 S.Ct. 819; Reece v. United States, 131 F.2d 186, 188 (5 Cir. 1942). Once the issue of entrapment is raised similar activities may be shown. Rocha v. United States, 401 F.2d 529 (5 Cir. 1968); United States v. Viviano, 437 F.2d 295, 299 (2 Cir. 1971). *Cf.* Neill v. United States, 225 F.2d 174 (8 Cir. 1955). " * * * The danger to the fairness of a trial requires that when the inquiry is into past offenses it be con-trolled in some reasonable manner." Hansford v. United States, 112 U.S.App. D.C. 359, 303 F.2d 219, 226 (1962); United States v. Johnston, 426 F.2d 112 (7 Cir. 1970). In the instant case the similar sale occurred during the period covered by the indictment. It was admissible to rebut the defense of entrapment raised by appellants' cross-examination of the Government's first witness, Agent Muhlhauser.

 Since we have found that the evidence of similar activity was admissible to rebut the defense of entrapment, we need not reach the question of its admissibility on the issue of intent, However, we do note that the trial court submitted Counts IV and V of the indictment to the jury on the theory that the Government had the burden of establishing that the acts of selling were done knowingly, wilfully and unlawfully, "with the specific intent to do something the law forbids, that is to say, with bad purpose to disobey the law." Under this theory the receipt of the evidence in question on the issue of intent was not error. See, *Crawford, supra*, 438 F.2d at 447. See generally, as to intent, Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Holdridge v. United States, 282 F.2d 302, 309–310 (8 Cir. 1960); see also, Robinson v. United States, 366 F.2d 575, 578 (10 Cir. 1966). We also note that in their defense of entrapment appellants urge lack of volition on their part due to the coercive effect of the alleged threat to the life of informant Liley. Having found the evidence admissible for the reasons previously stated, we do not reach the question of whether similar acts were admissible on the other grounds set out in *Lewis*, 423 F.2d at p. 459.[7] We are satisfied the evidence was properly admitted in this case.[8]

---

7. It would also appear to be material to the procuring agent defense. See United States v. Simons, 374 F.2d 993 (7 Cir. 1966).

8. In view of the comments in *Crawford* that intent is not an element of the offense and that motive is wholly immaterial and the comment in *Lewis*, 423 F.2d at p.

*The Procuring Agent Defense*

Appellants contend that the record establishes that they were, at most, procuring agents for the Government. They contend there was no evidence that appellants realized any profit from the transactions in question, except as might be inferred from the various alleged discussions of price which appellants claim were a part of their efforts to placate "Fast Eddy" for the protection of informant Thomas Liley. Much of what has already been said herein demonstrates there was adequate evidence to

459, that the defendant's complicity in other similar narcotics transactions may serve to establish intent or motive to commit the crime charged, we believe some additional observations with reference to the matter of intent as an element may be helpful.

Long ago the Supreme Court noted that the statutes then in existence prohibiting the sale of narcotics not in pursuance to a written order on a form issued by the Government did not make guilty knowledge an essential element of the offense. The Court observed that although the general rule at common law was that scienter was a necessary element in the indictment and proof of every crime, such was not essential where the statute did not require it and the purpose of the statute would be obstructed by such a requirement. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922); United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922). Recently it has been observed that where the product involved is deleterious as in *Balint*, "the probability of regulation is so great that anyone who is aware that he is in possession of them or dealing with them must be presumed to be aware of the regulation." United States v. International Minerals & Chemical Corp., 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971); United States v. Freed and Sutherland, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). However, this does not mean that the law dispenses with any requirement of intent and knowledge. In Morissette v. United States, 342 U.S. 246, 250, 72 S.Ct. 240, 243, the Supreme Court observed, "the contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability any duty of the normal individual to · choose between good and evil." However, at page 260, 72 S.Ct. at page 248 the Supreme Court adheres to the conclusion reached in *Balint* and *Behrman* "for the circumstances to which it was there applied." (Both cases were before

the Court on a demurrer to the indictment.) Under these circumstances we do not believe that in all cases under §§ 4704 (a) and 4705(a) it can be said that proof of intent is not required.

In the instant case the trial court instructed as to the narcotic charges that one of the essential elements was "doing the act or acts of selling, bartering, exchanging or giving away a narcotic drug knowingly, wilfully, and unlawfully." The latter were defined as follows:

"Unlawfully" means contrary to law. To do an act unlawfully means to do wilfully something which is contrary to law.

An act is done "wilfully" if done voluntarily and intentionally, and with the specific intent to do something the law forbids, that is to say, with bad purpose to disobey the law.

An act is done "knowingly" if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

See 2 Devitt and Blackmar, Federal Jury Practice and Instructions, §§ 45.06, 45.07, 45.08, Vol. 1 §§ 1607, 1611. We believe the instructions were appropriate in this case. Great care must be used in instructing a jury in crimes involving serious penalties to insure that those who acted mistakenly or inadvertently or for other innocent reasons are properly protected. Compare, United States v. International Minerals & Chemical Corp., *supra*, 402 U.S. p. 561, 91 S.Ct. p. 1700; Holdridge v. United States, *supra*, p. 310 of 282 F.2d. Finally, we note that the Comprehensive Drug Abuse Prevention and Control Act of October 27, 1970, Pub. L. 91–513, 84 Stat. 1236, completely revises, effective after April 1971, the control of traffic in marihuana and narcotic drugs and purports to repeal, *inter alia*, 21 U.S.C.A. § 331(q) and 26 U.S.C.A. § 4705. The penalty clause of the Act, § 841(a), although in no way significant in this case, would appear to moot this issue. That section prescribes no penalty unless the person charged is shown knowingly or intentionally to have violated the Act.

support the finding of the jury that appellants were not simply procuring agents for the Government's representatives. It suffices to say that both appellants offered to sell various kinds of illegal drugs in substantial quantities on many different occasions. There is ample evidence that appellants were actively engaged in selling drugs and not mere procuring agents for the Government in this instance. This issue was properly submitted to the jury under an instruction requested by appellants and patterned after a similar instruction given in Lewis v. United States, 119 U.S. App.D.C. 145, 337 F.2d 541, 543 (1964).[9] See also, United States v. Gougis, 374 F. 2d 758 (7 Cir. 1967).

### Count IV Sale by Appellant Brown

 Both appellants Brown and Liley testified that appellant Brown had no knowledge of the cocaine transaction charged in Count IV. The gist of their testimony was that although appellant Brown was in the car with appellant Liley when the cocaine transaction was completed with Agent Muhlhauser he was not aware that Liley handed Agent Muhlhauser the cocaine and in turn received cash from him. To the contrary Agent Muhlhauser testified that while both appellants were in the car he had a conversation with appellant Brown in which Brown indicated he and appellant Liley were partners and sold cocaine for the Hell's Angels and "that was their primary drug." Muhlhauser related further conversations with Brown over the price which was ultimately agreed upon as $1250 per ounce which he then paid and received the cocaine. Further review of the evidence is unnecessary. The matter of credibility was for the jury. We are satisfied that the record amply supports the finding of guilt as to appellant Brown on Count IV.

The judgment of guilty as to both appellants as charged and convicted is affirmed.

BRIGHT, Circuit Judge (concurring).

I concur in the result. I agree with Judge Stephenson's conclusion that the trial court in this case properly admitted the evidence of other crimes to show the absence of entrapment. Nevertheless, I feel constrained to add a comment relating to the admissibility of such evidence.

The question of the admissibility of evidence relating to other crimes must be resolved by trial judges on a case-by-case approach after weighing the need for the evidence against the possible prejudice flowing from its introduction. No mechanical rule can be applied in determining its admissibility.[1]

---

9. Judge Larson's instruction was as follows:

"If you believe that the Special Agent Edgar J. Muhlhauser or the (Special Employee) informer Thomas Liley, who acted under instructions and authority of the Bureau of Narcotics and Dangerous Drugs, asked either defendant to get some narcotics or drugs for him and thereupon either defendant undertook to act on the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling and thereafter delivered it to Agent Muhlhauser, the defendant would not be a seller, and you must find him not guilty on a particular count or counts, or of them."

1. McCormick makes the following comment on this subject:

There is an important consideration in the practice as to the admission of evidence of other crimes which is little discussed in the opinions. This is the question of rule versus discretion. Most of the opinions ignore the problem and proceed on the assumption that the decision turns solely upon the ascertainment and application of a rule. If the situation fits one of the classes wherein the evidence has been recognized as having independent relevancy, then the evidence is received, otherwise not. This mechanical way of handling such questions has the advantage of calling on the judge for a minimum of personal judgment. But problems of lessening

The Proposed Rules of Evidence for the United States District Courts and Magistrates contain an appropriate guideline:

> OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. [Rule 4.04(b).]

The comment to this subsection reads:

> Subdivision (b) deals with a specialized but important application of the general rule excluding circumstantial use of character evidence. Consistently with that rule, evidence of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for another purpose, such as proof of motive, opportunity, and so on, which does not fall within the prohibition. In this situation the rule provides that the evidence *may* be admissible. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and oth-

er factors appropriate for making decisions of this kind under Rule 4–03(a). Slough and Knightly, Other Vices, Other Crimes, 41 Iowa L.Rev. 325 (1956).

This rule and the comment thereto properly emphasize the trial judge's role of balancing the probative value of such evidence against its prejudicial nature in determining its admissibility.

the dangers of prejudice without too much sacrifice of relevant evidence can seldom if ever be satisfactorily solved by mechanical rules. And so here there is danger that if the judges, trial and appellate, content themselves with merely determining whether the particular evidence of other crimes does or does not fit in one of the approved classes, they may lose sight of the underlying policy of protecting the accused against unfair prejudice. The policy may evaporate through the interstices of the classification.

Accordingly, some of the opinions recognize that the problem is not mere-

ly one of pigeon-holing, but one of balancing, on the one side, the actual need for the other crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed, and that the accused was the actor, and the strength or weakness of the other crimes-evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to over-mastering hostility. C. McCormick, Evidence 332 (1954).