**The UNITED STATES, Appellee,**

v.

**James DAWSON, a/k/a Roach, Appellant.**

**No. 71-1711.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1972.

Decided Oct. 5, 1972.

Rehearing and Rehearing En Banc Denied Oct. 31, 1972.

**670**

James A. Stemmler, of Stemmler & Stemmler, St. Louis, Mo., for appellant.

Mervin Hamburg, Atty., U. S. Dept. of Justice, Daniel Bartlett, Jr., U. S. Atty., E. D. Mo., Sidney M. Glazer, Atty., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and URBOM,* District Chief Judge.

STEPHENSON, Circuit Judge.

James Michael Dawson was convicted in the United States District Court for the Eastern District of Missouri on two counts of selling, storing, and disposing of stolen explosive materials knowing them to be stolen, in violation of 18 U. S.C. § 842(h) [1] The conviction is appealed on the ground, among others, that § 842(h) is beyond the scope of the legislative power conferred on Congress by the Commerce Clause of the Constitution, and thus an improper intrusion upon legislative power reserved by the Tenth Amendment to the States, because the statute fails to require an evidential nexus between the proscribed activity and interstate commerce. It is urged that the statute must be stricken because it purports to prohibit all traffic in stolen explosive materials, including that conducted purely intrastate. We sustain the constitutionality of § 842(h) as a valid exercise of the Commerce power and we affirm the conviction.

I

■■ Long-standing decisions of the Supreme Court make clear that Congress may invoke the Commerce Clause as a basis for regulating purely intrastate activities which affect substantially interstate commerce. See, *e. g.*, Perez v. United States, 402 U.S. 146, 150–154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), and the cases there cited and discussed. In United States v. Darby, 312 U.S. 100, 118, 120–121, 61 S.Ct. 451, 85 L.Ed. 609 (1941), the Court, in delineating criteria by which to determine which activities intrastate affect commerce interstate,

---

* Of the District of Nebraska, sitting by designation.

1. Count one charged Dawson with sale and disposition of stolen blasting caps. Count two charged storage, sale and disposition of stolen dynamite.

empowered Congress to consider the cumulative impact on commerce of those activities as a class. Once it is determined that a given class of intrastate activity substantially affects the commerce, or the exercise of congressional power over it, there need not be proof that an isolated activity within that class itself has an effect on commerce. Maryland v. Wirtz, 392 U.S. 183, 188–193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968), and Katzenbach v. McClung, 379 U.S. 294, 304–305, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). See also, Schneider v. United States, 459 F.2d 540, 541–542 (C.A.8, 1972), and White v. United States, 399 F.2d 813, 822–824 (C.A.8, 1968).

■■■ The constitutional inquiry, rearticulated in Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 258, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964), is (i) whether Congress had a rational basis for finding that the particular class of intrastate activity against which the sanction of the statute is laid affects commerce, and (ii) if so, whether the means selected by Congress to eliminate the evil are reasonable and appropriate. In making this inquiry we are not limited to specific and formal findings made by Congress, but we can consider too the nature and effect of the evidence laid before Congress concerning the class of activity and the concomitant burdens on commerce which Congress meant to alleviate. Katzenbach v. McClung, *supra*, p. 304 of 379 U.S., 85 S.Ct. 377, citing United States v. Carolene Products Co., 304 U.S. 144, 152, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Semble, United States v. Bass, 404 U.S. 336, 349–350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The pri-

mary parameter for a valid exercise of the Commerce power, therefore, is not formal congressional findings, but the presence of factual data before the Congress supportive of a finding that the chosen regulatory scheme is necessary to the protection of commerce. Accord, United States v. Darby, *supra*, p. 120 of 312 U.S., 61 S.Ct. 451.

II

§ 842(h) provides:

"It shall be unlawful for any person to receive, conceal, transport, ship, store, barter, sell, or dispose of any explosive materials knowing or having reasonable cause to believe that such explosive materials were stolen."

It is part of Title XI of the Organized Crime Control Act of 1970, Pub.L. 91–452, § 1101 et seq., 84 Stat. 952. That title represents a seriously conceived and comprehensive attempt by Congress to protect interstate and foreign commerce against disruption by reducing the hazards to persons and property associated with the misuse of explosive materials while protecting the rights and privileges of legitimate users of explosives.[1a] This laudable objective is achieved through a detailed and particularized regulation of the importation, manufacture, distribution and storage of explosive materials.

■■■ Appellant, while avoiding the plain purport of the factual data before Congress when it enacted Title XI, asserts that § 842(h) is infirm because its enactment was not accompanied by congressional findings concerning the manner in which the misuse of explosives affects interstate commerce. This failure

---

[1a]. § 1101. Congressional Declaration of Purpose:

"The Congress hereby declares that the purpose of this title is to protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials. It is not the purpose of this title to place any undue or unnecessary Fed-

eral restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, storage, or use of explosive materials for industrial, mining, agricultural, or other lawful purposes, or to provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title."

to verbalize a connection between the devastation brought about by the unlawful use of explosives and commerce, it is argued, convincingly demonstrates that Congress cavalierly invoked the Commerce Clause as a subterfuge for implanting federal regulation on an area of national activity reserved by the Tenth Amendment to State control. We conclude that the congressional failure to make formal findings of fact in connection with the drafting of Title XI does not, against the glare of legislative history, render invalid the underlying legislation.

The legislative history of Title XI [2] rather clearly reveals a well-founded congressional concern that the wave of bombings prevalent in our Nation during the mid-to-late 1960's posed serious threats to the free flow of interstate and foreign commerce. Although there is no explicit and formal finding to that effect,[3] it would be perverse to assume that the congressional drafters did not view these terroristic acts—with the attendant cost in lives, in fear, and in dollars[4]—as having a deleterious impact on commerce. Statistical data laid before the Congress indicated that between January 1969 and April 1970—a period of sixteen months—the Nation had been plagued with no fewer than 1000 explosive bombings and 3500 incendiary bombings.[5] The magnitude of this senseless destruction, coupled with the fact that the attacks focused most heavily on police stations, court buildings, military facilities, college campuses, and corporate offices meaningfully point toward the need for prompt and effective federal sanctions over the unlawful use of explosive materials lest the attacks spread to the instrumentalities of commerce. To reason that purely intrastate misuse of explosive materials should have been a matter of less concern to Congress than misuse interstate is to reason mechanically and fallaciously. To the contrary, the residual climate of vituperation in existence at the time of Title XI enactment called for federal regulation of explosive materials without regard to a showing in each particular instance of a connection with commerce.

There is yet another shortcoming in appellant's appeal to a literalistic interpretation of the delegation of powers doctrine. Testimony before the House Subcommittee indicated that, at the time Title XI was promulgated, no more than 18 States were in the business of serious explosives regulation.[6] Thus, while there is merit in the notion that criminal statutes are best enacted and enforced at the State level, State inaction, as in this instance, might often undercut allegiance to that principle. Moreover, the case with which one may go from one jurisdiction to another emphasizes the need for effective and uniform explosives regulation, for in its absence,

2. See generally, Cong.Rec. Vol. 116, pp. 35298–35361. October 7, 1970, and 1970 U.S.Code Cong. and Adm.News, pp. 4040–4092. See also Hearings on H.R.17154, H.R.16699, H.R.18573 and Related Proposals Before a Subcomm. of the House Comm. on the Judiciary, 91st Cong., 2d Sess. (1970).

3. H.R.18573, similar in purpose, in scope, and in effect to the bill enacted as Title XI, included a specific finding that the manufacture, distribution and misuse of explosives has a significant effect on interstate commerce. For reasons not readily apparent from the materials before us, a similar prefatory finding was omitted from Title XI. See pp. 155–159 of Hearings, supra.

4. As an example, Congress could have concluded from data presented it by the Department of Justice that between January 1969 and April 1970 there were 43 killings, 384 injuries, and property damage totaling at least $21,800,000 arising from incendiary and explosive bombings, pp. 35319–35320 of 116 Cong.Rec., supra.

5. 116 Cong.Rec. 35298, supra. Indeed, in the State of Iowa alone, there were, during the same period, 75 bombings involving incendiaries, 105 bombings by explosives, and 375 bomb threats. Id., at 35300.

6. pp. 60–61 of Hearings, supra.

circumvention of existing State law likely would be the rule rather than the exception.

The free and uninterrupted movement of goods through the channels of commerce must depend on public order and safety. In a bill whose very purpose was to reduce to a minimum a substantial threat to these imperatives, the Congress, in imposing a stringent regulatory framework governing explosives, essayed an appropriate and reasonable means to eliminate a pervasive evil. There being a rational basis upon which Congress properly could have determined that the misuse of explosive materials is one activity which, as a class, affects commerce, the Government need not specifically allege and prove a connection between interstate commerce and the conduct made criminal by § 842(h).

■ Appellant also argues that the statute is overinclusively drafted. He does not contend specifically that his own conduct is beyond the proscription of § 842(h), and thus might itself constitutionally be punished, but he urges that, hypothetically, the statute lends itself to at least two impermissible applications. *First,* he asserts that the statute covers one who has perfectly good title to explosive materials that, at some time previously, had been stolen. *Second,* he contends that the statute applies even to an owner who, after recovering explosives stolen from him, wishes to sell or to continue to possess those materials.

The usual approach to measuring the constitutionality of an allegedly overbroad statute is to weigh the consequences of the statute's application in the instant case. Yazoo & Mississippi Valley Railroad Co. v. Jackson Vinegar Co., 226 U.S. 217, 219–220, 33 S.Ct. 40, 57 L.Ed. 193 (1912), and United States v. Raines, 362 U.S. 17, 20–24, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). Since appellant fails even to suggest that his own

conduct falls within either of the hypothetical situations, and in view of the trial court's instruction requiring proof of wilfullness, see United States v. Brown, 453 F.2d 101, 109 n.8 (C.A.8, 1971), we think it clear that § 842(h) has operated constitutionally in this case.

### III

■ In addition to his constitutional claims, the appellant pivots his demand for reversal on the contention that the trial court erred in 8 separate respects. These are directed to the sufficiency of the evidence to support the jury verdict of guilt, to certain of the trial court's procedural and evidentiary rulings, and to the trial court's instructions. With the exceptions hereafter noted, we view these assertions as strained and wholly devoid of merit. It suffices merely to conclude, as to these, that viewing the evidence in the light most favorable to the Government as the prevailing party, see United States v. Lodwick, 410 F.2d 1202, 1204 (C.A.8, 1969), certiorari denied, 396 U.S. 841, 90 S.Ct. 105, 24 L.Ed.2d 92, and resolving all reasonable inferences in favor of the Government, see Friedman v. United States, 347 F.2d 697, 706 (C.A.8, 1965), certiorari denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354, there is sufficient proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the appellant was charged. We hold that the case was presented fairly and ably to the jury and that the verdict has adequate foundation in the evidence.

### IV

We discuss seriatim those of the asserted errors requiring comment:

■ A. Unlawful entrapment was the principal defense made to the charges for which the appellant was prosecuted. That issue went to the jury under the instruction set forth in the footnote.[7] The appellant challenges that

---

7. "The Defendant asserts that he was a victim of entrapment as to the crime charged in the indictment. [sic]

"Where a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement

portion of the charge stating that it is not entrapment when a Government agent, suspecting that a person is engaged in the illicit sale of explosives, pretends to be someone else and offers to purchase explosives from the suspect. The argument is made that since the instruction allows the Government to induce a sale on the basis of suspicion, it reduces to a nullity the conceptual framework of the substantive defense of unlawful entrapment.

The instruction tracks precisely the substance of the charge set forth in Devitt and Blackmar, Federal Jury Practice and Instructions, § 13.13, at 290–291 (2nd Ed. 1970), as well as the one specifically approved by this court in United States v. Brown, *supra.* See pp. 105–107 of 453 F.2d. We need not take the space to discuss again why the instruction accords with the appropriate law, because we find that, viewed whole, it specifies accurately the constitutive elements of the defense of unlawful entrapment as stated by the Court in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), and Sorrels v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and by this court in Cross v. United States, 347 F.2d 327 (C.A.8, 1965). We also conclude that the jury's resolution of this issue against the appellant is supported by the evidence.

B. During the course of trial appellant moved to strike the testimony of a Government agent that appellant had stated that "he had gotten some blasting caps in Illinois but they had to discard the blasting caps because the police saw them trespassing on this land." Appellant urged that it was prejudicial to admit evidence of an offense not charged in the instant information. The trial court, in overruling the motion to strike, advised counsel that the jury would be instructed that appellant was not on trial for any act or conduct not charged and, if appropriate, that the evidence was admissible only for the purpose of establishing appellant's intent. In its formal charge to the jury, however, the trial court instructed the jury that "[t]he [d]efendant is not on trial for any act or conduct not alleged in the information," but failed to include an instruction limiting the evidential effect of the foregoing testimony. Thereafter, in response to the court's inquiry as to whether the parties desired additional instructions, the Government requested an instruction explaining the effect of the challenged testimony. The court, over defense objection, then instructed the jury that "evidence of other crimes is admissible when relevant to motive, intent or the absence of mistake or accident."

To sustain on appeal his contention that the giving of the limiting instruction as a separate charge was error, the appellant, relying on Fed.Rules Cr.Proc.,

officers or their agents to commit a crime, he is a victim of entrapment, and the law as a matter of policy forbids his conviction in such a case.

"On the other hand, where a person already has the readiness and willingness to break the law, the mere fact that Government agents provide what appears to be a favorable opportunity or facility is not entrapment. For example, when the Government suspects that a person is engaged in the illicit sale of explosives, it is not entrapment for a Government Agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase explosives from such suspected person.

"If, then, the Jury should find beyond a reasonable doubt from the evidence in the case that, before anything at all occurred respecting the alleged offense involved in this case, the Defendant was ready and willing to commit crimes such as charged in the indictment, [sic] whenever opportunity was afforded, and that Government officers or their agents did no more than offer the opportunity, then the Jury should find that the Defendant is not a victim of entrapment.

"On the other hand, if the evidence in the case should leave you with a reasonable doubt whether the Defendant had the previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some officer or agent of the Government, then it is your duty to acquit him."

 

Rule 30, 18 U.S.C.A.,[8] urges that he was given no specific advance notice that the instruction would be given, that he was not given adequate opportunity to study the proposed instruction and to formulate a proper objection, and that the instruction placed undue and prejudicial emphasis on the similar acts evidence.

■ Although there was not in this case strict compliance with the formal requirements of Criminal Rule 30, we find no error in the procedure pursued. Counsel was twice alerted that the instruction would likely be given, first at the time his motion to strike was overruled, and again when the court instructed the jury to consider only the offense charged. Thus, counsel cannot claim unfair surprise as a result of the belated separate charge. Moreover, while the evidence in question was admissible to prove knowledge, intent and lack of mistake on appellant's part, it arguably would have been error not to give appropriate limiting instructions. See, e. g., Love v. United States, 386 F. 2d 260, 266 (C.A.8, 1967), certiorari denied, 390 U.S. 985, 88 S.Ct. 1111, 19 L. Ed.2d 1286. Finally, we note that defense counsel alluded to his theory as to the purport of the prior misconduct evidence during his closing remarks to the jury. This factor, when considered in connection with those already mentioned, make clear that appellant sustained no harm from the challenged procedure.

■ C. On the last day of trial the court, after receiving three continuous hours of evidence which closed the record, conferred with counsel concerning the instructions. At the end of this conference defense counsel requested a 15 minute recess within which to organize his thoughts and to sharpen his clos-

ing argument. The request was denied and arguments commenced forthwith. The appellant now asserts that this summary denial constitutes an abuse of discretion and a deprivation of Due Process.

Although it is a better practice to afford counsel some time between the end of trial and the commencement of arguments within which to gather his thoughts, the trial court's refusal so to act in this case did not harm the presentation of appellant's summation. The trial consumed but 2 days; the issues were not complex, and counsel was able to summarize fully the appellant's view of the evidence. No more is required.

The judgment of conviction appealed from is affirmed.

Affirmed.

8. Insofar as here relevant, this Rule provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed."

The Government has conceded that Rule 30 was not followed here.