**UNITED STATES of America, Appellee,**

v.

**Daniel G. REDERTH, Appellant.**

No. 88–5115.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 4, 1988.

Decided April 12, 1989.

Larry M. Von Wald, Rapid City, S.D., for appellant.

Lonnie Bryan, Asst. U.S. Atty., Rapid City, S.D., for appellee.

Before LAY, Chief Judge, and WOLLMAN and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

Daniel G. Rederth appeals from the district court's[1] judgment entered on a jury verdict convicting him of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. We affirm.

During 1986, Rederth's brother-in-law, Michael Elsasser, was actively engaged in the distribution of cocaine. Elsasser's only other income was his annual salary of $16,-

---

**1.** The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

000 from his job as a mechanic. Between February 1986 and September 1986 Rederth made four separate loans of money to Elsasser. The first loan, made in February of 1986, was for $2,000. Elsasser repaid the loan within two weeks. He also paid Rederth $200 in interest and gave him one gram of cocaine. A second loan, for $4,000, was repaid within one month. Elsasser paid $500 in interest on this loan and again gave Rederth one gram of cocaine. The third loan, also for $4,000, was repaid in the same manner as the second loan. The fourth and final loan was made on September 29, 1986, and was in the amount of $7,000. Although he had promised to repay Rederth within two weeks, along with $1,000 in interest, Elsasser was arrested before he could do so.

The grand jury returned an indictment charging Rederth with four counts of aiding and abetting the distribution of cocaine —one count for each loan—and one count of conspiracy to distribute cocaine. Rederth's position at trial was that he made the first two loans without knowledge that Elsasser was distributing cocaine. He contended that he made the third and fourth loans to allow Elsasser to pay off drug debts and to thus protect Elsasser and his family from Elsasser's cocaine supplier. The jury found Rederth guilty on the conspiracy count and on the aiding and abetting count premised on the third loan.

## I.

After Elsasser was arrested, Detective Dan Peterson of the Rapid City Police Department and Agent Kevin Thom of the South Dakota Division of Criminal Investigation traveled to Sheridan, Wyoming, to interview Rederth. An officer of the Sheridan Police Department called Rederth and asked him to come to the police station to speak with Peterson and Thom. Rederth complied, and during the interview allegedly stated that he knew Elsasser was going to purchase "a bunch of cocaine" with the $7,000 Rederth had loaned him. Prior to trial, Rederth moved to suppress the statement as involuntary. After a hearing on the motion, the district court determined that the statement was voluntarily given.

Detective Peterson testified during the government's case in chief. He described the circumstances surrounding the interview and recounted Rederth's statement. The district court sustained Rederth's objection to testimony that the interview ended when the officers suggested to Rederth that he obtain an attorney, and the court instructed the jury to disregard the statement. On cross-examination, defense counsel elicited testimony from Detective Peterson that Rederth was not given the *Miranda* warnings prior to questioning. On redirect examination, Peterson testified that after approximately thirty minutes Rederth indicated that he wished to end the interview and then asked the officers, "What would you guys do?" The officers responded that perhaps he should consult with an attorney, whereupon Rederth left the police station. The district court overruled Rederth's objection to the admission of this testimony and denied a subsequent mistrial motion.

Rederth argues that admission of Detective Peterson's testimony regarding Rederth's termination of the interview was an improper use of Rederth's silence in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We do not agree.

*Doyle* held that the use of a defendant's post-*Miranda* warnings silence for impeachment purposes is fundamentally unfair "because *Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him." *Anderson v. Charles*, 447 U.S. 404, 407–08, 100 S.Ct. 2180, 2181–82, 65 L.Ed.2d 222 (1980) (per curiam); *see also Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 3107, 97 L.Ed.2d 618 (1987); *Wainwright v. Greenfield*, 474 U.S. 284, 290, 106 S.Ct. 634, 638, 88 L.Ed.2d 623 (1986); *Fletcher v. Weir*, 455 U.S. 603, 606, 102 S.Ct. 1309, 1311, 71 L.Ed.2d 490 (1982) (per curiam); *Jenkins v. Anderson*, 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980). Rederth was not under arrest and had not been

given the standard *Miranda* warnings. He was told that he did not have to talk to the officers and that he could terminate the interview at any time. When he asked the officers what they would do, they suggested that he consult an attorney. Noticeably absent from the warnings given to Rederth was the explanation that anything said by him could and would be used against him in court. *See Miranda v. Arizona,* 384 U.S. 436, 469, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966). The Supreme Court has indicated that it is this component of the *Miranda* warnings which is the source of the implicit affirmative assurance that a suspect's silence will not be used against him. *See South Dakota v. Neville,* 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983) (dictum); *see also Greenfield,* 474 U.S. at 298, 106 S.Ct. at 642 (Rehnquist, J., concurring) ("The logical corollary of this warning—that what respondent *does* say *can* be used against him—is that what he does *not* say *cannot*." (Emphasis in original)). Thus, Rederth was not given affirmative governmental assurances that his silence would not be used against him. The strictures of *Doyle* and its progeny were therefore not violated. *See Weir,* 455 U.S. at 607, 102 S.Ct. at 1312.

## II.

■ Rederth next asserts that the district court improperly refused his requested theory of defense instruction, which stated:

> [I]f the Defendant loaned money to Mike Elsasser for the purpose of protecting the safety of Mike Elsasser and the members of Mike Elsasser's family, that that [sic] does not violate the law of the United States so long as the loan of money is not made with the intent that it be used for the purpose of possessing cocaine with intent to distribute or for the purpose of distributing cocaine.

The district court's Instruction No. 25 stated:

> Intent and motive should never be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or permitted.
>
> Personal advancement and financial gain are two well-recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, and another to voluntary acts of crime.
>
> The defendant contends that he had a motive to loan money to protect the safety of his brother-in-law, Mike Elsasser, and Elsasser's family. Good motive is never a defense where the act done or omitted is a crime, but it may be considered by the jury in the determination of the state of mind or intent of the accused.

Rederth argues that the court's instruction failed to specifically focus upon his theory of defense. We do not agree.

It is firmly established that a defendant is entitled to an instruction on his theory of the case if a request is timely made and the proffered instruction is supported by the evidence and correctly states the law. However, it is equally well established that a defendant is not entitled to a particularly worded instruction and that the trial court has considerable discretion in framing the instructions. It is sufficient if the instruction actually given by the trial court adequately and correctly covers the substance of the requested instruction. Finally, it must be remembered that the adequacy of the trial court's instructions is to be judged by considering the instructions as a whole.

*United States v. Richmond,* 700 F.2d 1183, 1195–96 (8th Cir.1983) (citations omitted). Instruction No. 25 informed the jury of Rederth's purported motive and the consideration the jury could give to this motive. Instruction No. 23 stated that the crimes charged require proof of specific intent before the defendant could be convicted and specifically defined the meaning of specific intent. The court's instructions thus adequately and correctly covered the substance of Rederth's requested instruction. *See United States v. Hammond,* 642 F.2d 248, 250 (8th Cir.1981).

### III.

 Rederth next contends that the district court erred in overruling his objection to the government's cross-examination of his character witness, W.D. Willey. Willey testified on direct examination that Rederth's reputation for truthfulness and honesty in the community was very good. On cross-examination, the prosecutor asked Willey if he was aware that Rederth had purchased cocaine, if he had been at Rederth's home when Rederth and others used cocaine, and if he knew that Rederth had "supplied known cocaine distributors with money that was used to continue distributing cocaine." Willey responded to each inquiry in the negative.

Assuming, without deciding, that Rederth's prior drug-related activity was not a permissible area of inquiry on cross-examination, any error was harmless. The instances of conduct involved here were already before the jury. Rederth had testified that he had used cocaine with others in his home, had acquired cocaine from Elsasser, and that he knew Elsasser was distributing cocaine by the time he made the third loan. Elsasser testified that in paying off the cocaine debts with the proceeds from the first three loans he was continuing his business as a cocaine dealer. He also testified that he had sold cocaine to Rederth. Furthermore, during its pretrial instructions, the court told the jury that statements, arguments, questions, and comments by lawyers are not evidence. The court repeated this instruction at the close of trial. We conclude, therefore, that any error in this regard was harmless beyond a reasonable doubt.

### IV.

Rederth next challenges the sufficiency of the evidence to convict him. In evaluating the sufficiency of the evidence supporting a jury verdict, we view the evidence in the light most favorable to the government and give the government the benefit of all inferences that reasonably may be drawn from the evidence. *United States v. Kouba,* 822 F.2d 768, 773 (8th Cir.1987). We will not reverse a jury verdict if there is substantial evidence to support it. *Id.* We find the evidence more than sufficient to establish the violations.

### V.

Finally, Rederth argues that the prosecutor made several improper statements during closing argument. With one exception, Rederth did not object to these statements at trial, and we do not believe that they constituted plain error. Rederth did object to the prosecutor's reference to facts not in evidence. The prosecutor argued that Rederth, during his interview with Detective Peterson, had refused to identify a friend who was present when Rederth made the fourth loan to Elsasser. The court overruled Rederth's objection to this statement. The prosecutor then argued that Rederth would not identify his friend because he was protecting his drug associates. Rederth did not object to this argument. The government concedes that there was no evidence in the record to show that another person was present during the fourth loan transaction. Viewing in the context of the entire trial, however, and considering the district court's instructions to the jury that counsel's statements are not evidence, we find the error harmless beyond a reasonable doubt.

We have reviewed Rederth's remaining allegations of prosecutorial misconduct and find them to be without merit. We therefore affirm the convictions on both counts.