**UNITED STATES of America, Plaintiff,**

v.

**Norman COLLINS, James McReynolds, and Mountain Plains Construction Co., Defendants.**

**No. 89–00083–01/03–CR–W–H–M.**

United States District Court, W.D. Missouri, W.D.

Jan. 30, 1991.

ment. *New York Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

James R. Wyrsch, Kansas City, Mo., for Collins.

Gerald M. Handley, Kansas City, Mo., for McReynolds.

Richard W. Miller, Kansas City, Mo., for Mountain Plains.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This case is on appeal to the District Court from a jury trial before Magistrate John T. Maughmer. Defendants were convicted on three counts of misdemeanor violations of 18 U.S.C. §§ 842(j), 844(b), and 2(a). Defendants on appeal allege six errors requiring either an order of acquittal, dismissal of the indictment or a new trial. For the following reasons, this Court affirms defendants' convictions.

### FACTS

Norman Collins is owner, president and CEO of Mountain Plains Construction, Inc. ("Mountain Plains"). Mountain Plains is incorporated in Texas and registered as a foreign corporation in Missouri, Kansas and several other states. James McReynolds was the Project Foreman at Mountain Plains' mid-town freeway job site. The mid-town freeway job site was a blasting site located at 87th Street and 71 Highway in South Kansas City, Missouri.

Early on November 29, 1988, a fire was started at this location. Firemen arrived at the scene. Soon afterwards, a trailer exploded, killing several of the firemen. Sometime later, a second trailer exploded.

ATF agents later arrived at the site of the explosion. During their inspection they discovered that the two trailers had contained explosives and that there were two other explosives magazines on the site which had not been damaged.

During the November 29, 1988, investigation and on several other days during the next two weeks, ATF agents discovered that Mountain Plains had an ATF explosives user permit and had been storing explosives on the site. They also found that Mountain Plains had not notified ATF of the acquisition of explosives magazines and that explosives magazines were placed too close to a highway and to an inhabited building.

On January 30, 1989, ATF agents interviewed defendants Collins and McReynolds

regarding the suspected arson and the storage violations. During this interview, both Collins and McReynolds admitted that they jointly decided where the trailers would be placed and that in making these decisions, they had not used the Table of Distances as required by the regulations.

McReynolds said that he had told the truck drivers where to place the trailers upon delivery. Collins admitted he was aware of the applicable regulations and that he remembered a Compliance Inspector (Revalee) going over the requirements with him in June of 1987. Collins also said that it was an oversight on his part that he had not notified ATF upon acquisition of the magazines.

On June 14, 1989, the defendants were charged in a four-count information with violations of the above-mentioned statutes.

The defendants, in defense of the charges issued, attempted to persuade the jury that they did not know they were violating the regulations, that the regulations did not apply to them, and that they were not responsible for the explosives.

The jury found defendants Collins and Mountain Plains guilty on Counts I, II and III. Defendant McReynolds was found guilty on Counts II and III.

## DISCUSSION

Each of the defendants' allegations of error will be discussed separately below.

### I. "Knowingly" as an Essential Element

■ Defendants contend that the trial court erred in determining that "knowingly," as an element of the offenses charged, related only to the issue of whether defendants knew they were handling explosives. Defendants argue that "knowingly" is an essential element with reference to the statutes and regulations allegedly violated such that defendants could not be found guilty unless they had the specific intent to violate the law.

While this Court has located no decision on the issue of "knowingly" as applied to 18 U.S.C. § 842(j), Supreme Court decisions concerning analogous statutes are instructive. In *United States v. Freed*, the Supreme Court found that the government need not prove specific intent to violate the law or knowledge that hand grenades were unregistered in violation of the National Firearms Act. 401 U.S. 601, 697, 91 S.Ct. 1112, 1117, 28 L.Ed.2d 356 (1971). "[T]he only knowledge required to be proved was knowledge that the instrument possessed was a firearm." *Freed*, 401 U.S. at 607, 91 S.Ct. at 1117 (citing *Sipes v. United States*, 321 F.2d 174, 179 (8th Cir.1963)).

In coming to this conclusion, the Court noted the growing number of exceptions to a *mens rea* requirement in regulatory areas involving activities affecting public health, safety and welfare. *Id.* The act in question, the Court concluded, "is a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act." *Freed*, 401 U.S. at 609, 91 S.Ct. at 1118.

In *Liparota v. United States*, a case relied on by defendants, the Court explicitly distinguished the food stamp statute before it from the firearms statute at issue. 471 U.S. 419, 433, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985). Possession of food stamps in a manner unauthorized by statute or regulation, the Court held, is far different from instances where "Congress has rendered criminal a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety." *Liparota*, 471 U.S. at 433, 105 S.Ct. at 2092. In distinguishing these lines of cases, the Court found that "[a] food stamp can hardly be compared to a hand grenade, see *Freed*, nor can the unauthorized acquisition or possession of food stamps be compared to the selling of adulterated drugs, see [*United States v.] Dotterweich* [320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943)]." *Id.*

Applying this rationale to the instant case, this Court concludes that the trial court properly found explosive materials to be more analogous to hand grenades than

to food stamps. Proper storage of explosives is a "type of conduct that a reasonable person should know is subject to stringent public regulation...." *Id.* The trial court did not err on this point.

## II. Traffic Count Evidence

Defendants assign error to the trial court's admission into evidence of a traffic count of vehicles compiled by the Missouri Department of Highways and Transportation and introduced through the testimony of John Rankin, an employee of this department.

Defendants' argument is without merit. The record shows that the evidence was introduced after proper foundation had been presented. All of the alleged shortcomings of the evidence were brought out by defendants' counsel in cross-examination. What was to be believed was for the jury to determine.

The trial court did not clearly abuse its broad discretion in admitting this evidence. *United States v. Oliver*, 908 F.2d 260, 263 (8th Cir.1990).

## III. Interstate Commerce Requirement

■ Defendants allege error in the trial court's overruling of defendants' motion to dismiss the information because it did not allege that the activities of the defendant corporation involved interstate commerce. On this same basis, defendants argue that it was error not to include interstate activity as an element of the offenses charged in the jury instructions and to instruct the jury on the interstate commerce issue.

In determining that there need be no showing of interstate activity in charges under 18 U.S.C. § 842(h), the Eighth Circuit stated:

> Long-standing decisions of the Supreme Court make clear that Congress may invoke the Commerce Clause as a basis for regulating purely intrastate activities which affect substantially interstate commerce.... Once it is determined that a given class of intrastate activity substantially affects the commerce, or the exercise of congressional power over it, there need not be proof

that an isolated activity within that class itself has an effect on commerce.

*United States v. Dawson*, 467 F.2d 668, 670–71 (8th Cir.1972).

As defendants point out, the definitional section of the statutory scheme at issue defines interstate commerce to mean traveling from one state to a place outside that state. 18 U.S.C. § 841(b). Some of the activities prohibited by § 842 require transportation in interstate commerce as an element. *See* 18 U.S.C. § 842(a)(3)(A) and (i). The activities made unlawful by 18 U.S.C. § 842(j) under which defendants in the instant case are charged, like § 842(h) in *Dawson*, does not require transportation in interstate commerce as an element.

Given the Eighth Circuit's holding in *Dawson*, that the government need not allege and prove a connection between interstate commerce and the conduct made criminal under § 842(h), *Dawson*, 467 F.2d at 673, and the lack of transportation in interstate commerce as an element in § 842(h) and (j), this Court concludes that interstate commerce need not be alleged or proved in the instant case. As such, no error can be assigned to the trial court's holding on this issue.

Defendants' other allegations of error under this section are without merit.

## IV. Motion for Judgment of Acquittal

Defendants allege that the trial court erred in overruling defendants' motion for judgment of acquittal because there was insufficient evidence to convict defendants on each count.

The Eighth Circuit standard governing review of a jury's verdict for insufficient evidence has recently been summarized:

> The defendant's conviction must be upheld if, after viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. In reviewing the guilty verdict, we must give the government the benefit of all inferences that may be reasonably drawn from the evidence. The evidence need not exclude every reasonable hypothesis of inno-

cence, but must simply be sufficient to convince the trier of fact beyond a reasonable doubt that the defendant is guilty. If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb a conviction. Moreover, the appellate court must keep in mind that the standard to be applied is a strict one, and the finding of guilt should not be overturned lightly. *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990).

Defendants contend that the government presented insufficient evidence under Count I that the defendants were involved in interstate commerce or that defendants failed to timely notify ATF by phone.

As noted above, involvement in interstate commerce is not an essential element of the offense charged in Count I. Defendants' contention on this issue is, therefore, without merit.

█ Defendants further argue that, though written notice is required several days prior to any act covered in 27 C.F.R. § 55.63, telephone notice to ATF pursuant to 27 C.F.R. § 55.63 may be done at any time prior to or after the regulated activity.

Defendants' interpretation of this regulation is unreasonable. The purpose of the notification requirement is to provide timely information so that ATF officials may inspect explosive storage to assure that such storage conforms with regulations. Written notice must be provided several days prior to any changes in storage so that ATF may receive and process the information before the changes are implemented. Telephone notice is immediate and, therefore, does not require several days of advance notice. A reasonable interpretation of the regulation, however, would require telephone notice prior to or at the time of the changes to be made.

Defendants also contend that the government did not produce sufficient evidence that the explosives were under the control of defendants. Defendants attempted to persuade the jury that the explosives at issue were controlled by Maynes rather than defendants. The government, however, presented evidence to the contrary,

and the jury believed the government. The record contains more than sufficient evidence to support the government's position.

Finally, defendants argue that, lacking the improperly admitted traffic count evidence, there is insufficient evidence to show that the explosives were not stored in accordance with distance regulations. As discussed above, this evidence was properly admitted. As such, defendants' contention on this issue must fail.

Finding that there was sufficient evidence to support the jury's findings, defendants' allegations of error on this point will be denied.

### V. Instruction on Consignment

█ Defendants argue that the trial court erred in failing to instruct the jury that a consignment was a form of agency, either in its initial charge to the jury or in response to a question from the jury during its deliberation.

"[A] defendant is not entitled to a particularly worded instruction and ... the trial court has considerable discretion in framing the instructions." *United States v. Richmond,* 700 F.2d 1183, 1195 (8th Cir. 1983); *United States v. Rederth,* 872 F.2d 255, 258 (8th Cir.1989). No error is assigned if the instruction given by the trial court adequately and correctly covers the substance of the requested instruction. *Id.*

Instructions 21 and 22, defendants' theory of the case instructions, each state that defendants contend that the "goods in question were on consignment to Mountain Plains, that consignment is a form of agency, and that, therefore, since the goods were not distributed, the obligation to store them properly under ATF Regulations fell on Maynes, not on" the defendants.

This appears to be the instruction requested by defendants on consignment. No other instruction was offered on this issue. This instruction was given to the jury twice before the jury was sent to deliberate.

During deliberation, the jury sent a note to the court asking for a definition of con-

signment. The court responded by sending to the jury a note stating that there is no definition of consignment in the instructions and that the court could not instruct the jury further at this time.

While it may have been technically more accurate to state that the only definition of consignment was that given in defendants' theory of the case instructions (which were available to the jury in writing in the jury room), there was no error in refusing to further define the term. The defendants received their requested instruction on consignment in the theory of the case instructions. They are entitled to nothing more.

### VI. Inspection of Explosion Site Without Warrant

Defendants contend that the inspections of the explosive storage site by ATF agents after the explosion on November 29, 1988, was improper and that the trial court erred in not suppressing the evidence obtained during these inspections.

Regulations provide that "[a]ny ATF officer may inspect the site of any accident or fire in which there is reason to believe that explosive materials were involved." 27 C.F.R. § 55.31. Such inspections, authorized by statute as in the present case, 18 U.S.C. § 843(f), are permissible. *United States v. Biswell*, 406 U.S. 311, 317, 92 S.Ct. 1593, 1597, 32 L.Ed.2d 87 (1972).

Even were this Court to conclude otherwise, the agents' reliance on statutory and regulatory permission to conduct warrantless inspections was reasonable and thus not within the reach of the exclusionary rule. *Illinois v. Krull*, 480 U.S. 340, 356–57, 107 S.Ct. 1160, 1171, 94 L.Ed.2d 364 (1987).

### CONCLUSION

This Court has reviewed the record in the present case and defendants' alleged errors. Concluding that the trial court did not err in its rulings on the issues presented to this Court by the defendants, it is hereby

ORDERED that the judgment of the trial court is affirmed.