UNITED STATES, Appellee

v.

Walter D. DISNEY, Hospital Corpsman First Class
U.S. Navy, Appellant

No. 05-0068

Crim. App. No. 200100932

United States Court of Appeals for the Armed Forces

Argued May 4, 2005

Decided September 27, 2005

BAKER, J., delivered the opinion of the Court, in which GIERKE,
C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ. joined.

Counsel

For Appellant: Lieutenant Jason S. Grover, JAGC, USN (argued).

For Appellee: Lieutenant Guillermo J. Rojas, JAGC, USNR
(argued); Commander C. N. Purnell, JAGC, USN (on brief); Colonel
William K. Lietzau, USMC.

Military Judge:  Peter L. Fagan

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Disney, No. 05-0068

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a military judge alone at a general court-martial. He was charged with one specification of larceny of military property and one specification of storing stolen explosives in violation of 18 U.S.C. § 842(h)(2000), violations of Articles 121 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921, 934 (2000), respectively. Appellant entered a guilty plea to the Article 134 offense and to a part of the specification in the Article 121 offense.[1] After a contested hearing, he was convicted of both offenses as charged. The adjudged and approved sentence included a bad-conduct discharge, confinement for sixteen months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade, E-1. The United States Navy-Marine Corps Court of Criminal Appeals affirmed Appellant's conviction and sentence. This Court subsequently granted review on the following issue:

> WHETHER THE OFFENSE TO WHICH APPELLANT PLEADED GUILTY IN THE SPECIFICATION OF CHARGE II (STORE STOLEN EXPLOSIVE MATERIALS IN VIOLATION OF 18 U.S.C. § 842(h)) EXCEEDED CONGRESS'S AUTHORITY UNDER THE COMMERCE CLAUSE OF THE CONSTITUTION IN LIGHT OF UNITED STATES v. LOPEZ, 514 U.S. 549 (1995)?

We conclude that 18 U.S.C. § 842 (h) is a constitutional

---

[1] Appellant reserved an evidentiary issue with regards to his guilty plea to the Article 134 offense. This assignment of error was considered and rejected by the lower court, and was not granted as an issue before this Court.

2

exercise of Congress's authority under the Commerce Clause and is constitutional as applied to Appellant's conduct. Consequently, we affirm the decision of the Court of Criminal Appeals.

FACTUAL BACKGROUND

Appellant was a single Navy Seal with thirteen years of service at the time of his trial. Appellant shared his rental residence with a married couple, who intended to assume Appellant's lease upon his pending separation from the Navy. While cleaning out the residence's garage, the wife discovered U.S. Government ordnance Appellant had stolen from various military training events. She contacted a senior noncommissioned officer who notified Appellant's chain of command, which subsequently recovered the ordnance from Appellant's off-base garage. According to the incident report completed upon conclusion of this recovery operation, the ordnance included signal flares, grenade simulators, smoke grenades, blasting caps, detonating cord, fuse igniters, and over 13,000 rounds of various caliber small arms ammunition. During the hearing into the providence of Appellant's guilty plea to the offense of storing stolen explosives, the following colloquy took place between the military judge and Appellant:

MJ: And do you admit that those [explosive] items were either moving as, or were part of, or had been shipped or transported in interstate or foreign commerce?

ACC: Yes, sir. I believe they had all been made and shipped prior to and in interstate commerce.

MJ: Okay. And why do you believe that?

ACC: Sir, the list that I was provided through Mr. Bash [the ordnance inventory manager for Naval Special Warfare Group One] states that these different items and lists the items specifically and shows that they were all made in states other than California, therefore, they were all shipped through interstate commerce.

MJ: Okay. So sometime prior to their being stolen materials, they were shipped in interstate commerce?

ACC: That's my understanding, yes, sir.

MJ: And by that, it's your understanding that they were made in one state and then shipped eventually into California?

ACC: Yes, sir.

MJ: Did you transport them or know personally that they were shipped between states after they were stolen?

ACC: [No response.]

MJ: Let me break that up. Did you transport them between two different states?

ACC: No, sir.

MJ: Okay. But you believe that between their manufacture and the time that they were stolen, they were shipped in interstate commerce?

ACC: Yes, sir.

MJ: And that's based on the place of their manufacture?

4

ACC: Yes, sir.

DISCUSSION

The granted issue tests the constitutionality of an act of Congress. Such questions are reviewed de novo. United States v. Wright, 53 M.J. 476, 478 (C.A.A.F. 2000); Benning v. Georgia, 391 F.3d 1299, 1303 (11th Cir. 2004).

18 U.S.C. § 842(h) provides that:

> It shall be unlawful for any person to receive, possess, transport, ship, conceal, store, barter, sell, dispose of, or pledge or accept as security for a loan, any stolen explosive materials which are moving as, which are part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce, either before or after such materials were stolen, knowing or having reasonable cause to believe that the explosive materials were stolen.

Emphasis added. Appellant argues that the statute is unconstitutional as applied to his offense because his conduct lacked a substantial nexus to interstate commerce.[2] In answer, the Government initially argues that Appellant lacks standing to assert a commerce power limitation on Congress's authority

---

[2] We resolve this case without deciding whether Appellant waived his right to make an as-applied challenge to the statute when he entered an unconditional guilty plea to the Article 134 offense. See, e.g., United States v. Dwyer, 245 F.3d 1168, 1170 (10th Cir. 2001) ("Although [Appellant] has styled this issue as a jurisdictional challenge, he is in fact attempting to resurrect the issue of whether his weapon possession affected interstate commerce. [Appellant] waived this issue when he entered his guilty plea. By admitting in his plea agreement that 'such possession was in or affecting interstate or foreign commerce,' he admitted the interstate nexus element was satisfied.") (internal citation omitted). Waiver was not addressed by either party before the lower court. Subsequent to oral argument before this Court, Appellant filed a motion to submit a supplemental brief on the issue of waiver. The Government opposed the motion, and the Court denied it.

because he is a servicemember directly subject to Congress's plenary Article I authority to regulate the military. In the alternative, the Government contends that the unlawful storage of explosives substantially affects interstate commerce and that Appellant's conduct created the precise risks that Congress adopted 18 U.S.C. § 842(h) to regulate.

## Standing

Section 842(h)'s jurisdictional element relies on Congress's Article I, Section 8, Clause 3 power to regulate interstate commerce. The Government contends that Appellant lacks standing to assert a constitutional challenge to this jurisdictional element because Congress has plenary power to regulate him as a member of the United States military via its enumerated authority "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. 1, § 8, cl. 14. Thus, Congress need not rely on its Commerce Clause authority to reach this Appellant's conduct.

According to this logic, the offense applies in Appellant's case regardless of the constitutionality of the statute as applied to a civilian accused subject only to Congress's interstate commerce power. The broader legal implication of the Government's argument is that servicemembers would effectively be precluded from making any future jurisdictional challenge to an Article 134, UCMJ, Clause 3 (crimes and offenses not capital)

6

offense.

The Government's argument, however, is inconsistent with Article 134's text as well as Congressional intent. The plain language of Article 134, Clause 3 proscribes "crimes and offenses not capital, of which persons subject to this chapter may be guilty . . . ." As the Manual for Courts-Martial explains, if conduct is charged as a violation of Article 134, Clause 3, "the proof must establish every element of the crime or offense as required by the applicable law." Manual for Courts-Martial, United States (2000 ed.)(MCM), pt. IV, ¶ 60.b. Section 842(h) contains a statutory jurisdictional element that invokes Congress's Commerce Clause authority. Were we to conclude that element is unconstitutional as applied to Appellant's conduct, the statute would no longer constitute a crime or offense of which he could be found guilty. Thus, the language of the specified offense itself requires that we address Appellant's claim.

Congress could have enacted legislation specifically proscribing Appellant's conduct on the basis of his status as a servicemember. Moreover, Appellant's storage of stolen explosives could have been charged as a criminal violation under Article 134, UCMJ, Clauses 1 and/or 2. But in the case now before the Court, there is no indication that Congress or the charging authorities intended to except Appellant from the

7

jurisdictional standard or element generally applicable in 18 U.S.C. § 842(h) prosecutions.  We would anticipate an express legislative statement were Congress to deprive servicemembers of the procedural right to challenge the constitutionality of statutes under which they were convicted pursuant to Article 134, Clause 3, a right heretofore recognized in military law and practice.  See, e.g., United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003) (reversing Article 134, Clause 3 conviction for violation of federal child pornography statute on First Amendment grounds).  Absent such indication, we conclude that Appellant has standing to challenge the constitutionality of the statute on Commerce Clause grounds.

Merits

    While Appellant has standing to make his claim, we conclude that his attack on the statute's constitutionality, as applied to his conduct, fails.  Congress may regulate three broad categories of conduct pursuant to its commerce power:  the channels of interstate commerce, such as highways and rail lines; the instrumentalities of interstate commerce, or persons or things in interstate commerce, such as vehicles and goods; and those activities that substantially affect interstate commerce, such as intrastate coal mining or hotels catering to interstate guests.  United States v. Lopez, 514 U.S. 549, 558 (1995).  "[E]ven if appellee's activity be local and though it

8

may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." Gonzales v. Raich, 125 S. Ct. 2195, 2205 (2005).

Through the middle decades of the twentieth century, U.S. courts commonly sustained Congressional authority pursuant to this power. See, e.g., Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264 (1981); Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241 (1964); Wickard v. Filburn, 317 U.S. 111 (1942). In the 1995 Lopez case, however, the Supreme Court ruled that a federal criminal statute prohibiting possession of firearms on private, public, and parochial school campuses had an inadequate nexus to interstate or foreign commerce to warrant the exercise of Congressional authority, and consequently intruded on regulatory domain reserved to the various states' general police power through the Tenth Amendment:

> These are not precise formulations, and in the nature of things they cannot be. But . . . [t]he possession of a gun in a local school zone is in no sense an economic activity. . . Respondent was a local student at a local school; there is no indication that he had recently moved in interstate commerce, and there is no requirement that his possession of the firearm have any concrete tie to interstate commerce.

514 U.S. at 567. Similarly, in United States v. Morrison, 529 U.S. 598 (2000), the Court concluded that a federal civil cause

of action for victims of violent crime against women exceeded

the scope of Congress's commerce authority:

> The Constitution requires a distinction between what is
> truly national and what is truly local . . . .  The
> regulation and punishment of intrastate violence that is
> not directed at the instrumentalities, channels, or goods
> involved in interstate commerce has always been the
> province of the States.

Id. at 617-18.

In these decisions, the Court identified four

considerations informing its analysis of whether a regulated

activity substantially affects interstate commerce:  (1) whether

the statute regulates economic or non-economic activity; (2)

whether the statute contains an express jurisdictional element;

(3) whether Congress made findings regarding the connection to

interstate commerce; and (4) whether the link between the

prohibited activity and the effect on interstate commerce is

attenuated.  Id. at 609-12.

In the present case, Appellant seeks to draw on the

federalism concerns articulated in Lopez and Morrison to

challenge the jurisdictional basis of his conviction for storing

stolen explosives.[3]  In particular, he maintains, that his

intrastate storage of stolen explosives in his garage was an

---

[3] The Court decided Gonzalez subsequent to the final submission of briefs and
oral argument in this case.  The Court rejected an as-applied challenge to
Congress's power to regulate the intrastate production of medicinal
marijuana.  Although the outcome differs from the results in Lopez and
Morrison, the analytic framework, in our view, is consistent with that used
in Lopez and Morrison.

inherently local activity which did not substantially affect interstate commerce.

We disagree.  As a threshold matter we conclude that 18 U.S.C. § 842(h) is a constitutional exercise of the Congressional Commerce power.  United States v. Mikels, No. 96-10204, 1997 U.S. App. LEXIS 5967, at *6, 1997 WL 143965, at *2 (9th Cir. Mar 26, 1997) (unpublished); United States v. Folen, 84 F.3d 1103 (8th Cir. 1996).  As elaborated further in our as-applied analysis below, the disposition of stolen explosives "which are moving as, which are part of, which constitute, or which have been shipped or transported in, interstate or foreign commerce" clearly falls within the scope of Congress's enumerated Article I, Section 8 regulatory powers.

Applying the analytic framework identified in Morrison, we are further satisfied that 18 U.S.C. § 842(h) is constitutional as applied to Appellant's conduct.  First, we conclude that the statute regulates economic activity, and that Appellant's conduct fell within the scope of this regulated activity.  In Lopez, the Court's determination that the statute criminalizing possession of a handgun on school property did not regulate economic activity was strongly informed by the "stand alone" character of the crime.  514 U.S. at 561 ("[The statute] is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however

broadly one might define those terms. [The statute] is not an

essential part of a larger regulation of economic activity, in

which the regulatory scheme could be undercut unless the

intrastate activity were regulated."). In contrast, § 842(h)

was enacted as an essential part of a comprehensive federal

legislative scheme to effectively regulate the sale, storage,

transfer, or other disposition of explosives in interstate

commerce. See 18 U.S.C. § 841. Moreover, as the Supreme Court

recently reiterated:

> Our case law firmly establishes Congress' power to regulate
> purely local activities that are part of an economic "class
> of activities" that have a substantial effect on interstate
> commerce. . . . [E]ven if appellee's activity be local and
> though it may not be regarded as commerce, it may still,
> whatever its nature, be reached by Congress if it exerts a
> substantial economic effect on interstate commerce. We
> have never required Congress to legislate with scientific
> exactitude. When Congress decides that the 'total
> incidence' of a practice poses a threat to a national
> market, it may regulate the entire class. In this vein, we
> have reiterated that when a general regulatory statute
> bears a substantial relation to commerce, the de minimis
> character of individual instances arising under that
> statute is of no consequence.

Gonzales, 125 S. Ct. at 2205-06 (internal citations omitted).

Second, the statute includes an express jurisdictional

element, adopted subsequent to the Court's Lopez decision.

Further, Appellant conceded this element at trial when he stated

that the contraband had moved in interstate or foreign commerce

because it had been produced outside of California (the locus of

the crime).

12

Third, the stated purpose of § 842(h) and the statute's associated legislative history demonstrate that Congress found the illegal use and unsafe storage of contraband explosives to be a substantial hazard to interstate commerce. Pub. L. No. 91-452, § 1102, 84 Stat. 922 (1970); H.R. Rep. No. 91-1549 (1970), reprinted in 1970 U.S.C.C.A.N. 4007, 4013 ("Bombings and the threat of bombings have become an ugly, recurrent incident of life in cities and on campuses throughout our Nation."). Thus, Congress enacted the statute as part of a regulatory scheme intended to:

> protect interstate and foreign commerce against interference and interruption by reducing the hazard to persons and property arising from misuse and unsafe or insecure storage of explosive materials.

1970 U.S.C.A.A.N. at 4013. In Morrison, the Court looked beyond Congress's stated finding that gender motivated violence substantially affected interstate commerce, concluding that the substantial affects test "ultimately presents a judicial rather than a legislative question . . . ." Morrison, 529 U.S. at 614. However, Appellant's argument fails to even address the differences between the majority and the dissent in Morrison over the degree of judicial deference properly afforded to Congressional findings because it is patently obvious that the misuse and unsafe or insecure storage of explosive materials substantially affect interstate commerce. This is a conclusion

13

easily reached before September 11th, 2001, and it is easily reached after that catastrophic day.

Fourth, we are satisfied that there is a rational basis for concluding that Appellant's storage of stolen explosives has substantial direct implications for commerce. Gonzales, 125 S. Ct. at 2197 ("The Court need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding."). Regardless of the actual impact of Appellant's particular conduct, his storage of stolen explosives fell within a class of commercial activity within Congress's power to regulate. Id. ("[W]here the class of activities is regulated and that class is within the reach of federal power, the courts have no power to excise, as trivial, individual instances of the class.") (internal citations omitted). Appellant's actions diverted explosives out of the legal interstate market where they could be monitored and regulated and diverted them to his garage where federal regulations no longer applied regarding their storage or possible reentry into the marketplace.

Finally, we note that our conclusion is in accord with the decision of every court that has considered this issue in regards to 18 U.S.C. § 842(h) post-Lopez. See Mikels, U.S. App. LEXIS 5967, 1997 WL 143965; Folen, 84 F.3d 1103; see also United

14

States v. Kirk, 1997 U.S. App. LEXIS 12670 (5th Cir. 1997) (citing analysis in United States v. Dawson, 467 F.2d 668 (8th Cir. 1972), to reject Lopez challenge to federal criminal statute regulating possession of machine guns).

Accordingly, we affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals.